UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff : | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**          **(In Chambers)**

**ORDER RE: MOTION TO DISMISS COUNTERCLAIM, MOTION TO AMEND
COUNTERCLAIM, MOTION FOR SANCTIONS, AND MOTION TO DISMISS THIRD
PARTY COMPLAINT**

**I.
INTRODUCTION**

This lawsuit arises out of a bankruptcy proceeding filed in the District of Montana.  The
suit is brought by Marc S. Kirschner, the trustee in bankruptcy, against Timothy Blixseth, the
founder of the debtor, the Yellowstone Mountain Club ("the Club").  The Complaint seeks to set
aside, under federal and state law, an allegedly fraudulent release and to recover on two
promissory notes (the "Notes"), totaling approximately $200 million, executed by Blixseth in
favor of his former business entity and the former majority owner of the Club, BLX Group
("BLX").  The funds were received by BLX from the Club from the proceeds of a $375 million
loan made by Third Party Defendants, various Credit Suisse entities ("Credit Suisse").  The
Notes executed by Blixseth in favor of BLX have been assigned to the Club, BLX's creditor, for
collection.  In earlier proceedings in this Court, Blixseth unsuccessfully sought dismissal of the
pending action.  (See Docket No. 1 [Compl.]; Docket No. 18 [2/24/12 Order].)

When that tactic failed, Blixseth filed a Counterclaim and Third Party Complaint in which
he contends that Credit Suisse and related entities, Blixseth's ex-wife, Edra Blixseth, and now
Kirschner have participated in a RICO conspiracy with the object of gaining control of the Club
and its assets through predatory lending practices, the transfer of ownership of the Club to Edra
during the Blixseths' divorce proceedings, and the pending bankruptcy proceedings against the

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

Club.  Blixseth also makes three contract-based counterclaims against Kirschner related to his attempt to collect on the Notes.  (Docket No. 26 (Countercl.).)  In the Third Party Complaint, Blixseth seeks recovery from five Credit Suisse entities, in the event that he is found liable on the Notes, on theories of contribution and unjust enrichment.  (Docket No. 27 [Third Party Compl.])

Presently before the Court are a series of motions.  Kirschner seeks to dismiss the Counterclaim, arguing that, under Federal Rule of Civil Procedure 13, the Counterclaim was improperly filed against him in his personal capacity, and that, because Blixseth did not seek leave of the Bankruptcy Court, pursuant to Barton v. Barbour, 104 U.S. 126 (1881), this Court lacks subject matter jurisdiction over any claims asserted against him in his official capacity.  Kirschner also argues that the Counterclaim fails to state a claim against him.  (Docket No. 29 [Kirschner Mem. Dismiss].)  In a separate motion, Kirschner seeks sanctions against Blixseth and his counsel, in the amount of his reasonable fees and costs incurred in moving to dismiss the Counterclaim, on the bases that the Counterclaim is legally and factually frivolous and was filed with reckless disregard for the requirements of Rule 13 and the Barton doctrine.  (Docket No. 30 [Mem. Sanctions].)  Meanwhile, having failed to timely amend the Counterclaim as of right following the filing of the motion to dismiss or to obtain Kirschner's consent to amendment, see Fed. R. Civ. P. 15(a)(1)(B), 15(a)(2), Blixseth moves the Court for leave to amend the Counterclaim to name Kirschner in his representative capacity and to remove the RICO claim.  (Docket Nos. 41, 43 [Mem. Amend].)  The Credit Suisse entities move to dismiss the Third Party Complaint.  (Docket No. 57 [Credit Suisse Mem. Dismiss].)

A brief discussion of the factual and procedural background assists in an understanding of the issues and demonstrates that, although this is a complex case, resolution of the pending motions in this case turns out to be relatively simple and straightforward.  In sum, the Court agrees with Kirschner that the Counterclaim was improperly filed against him in his personal capacity, and that Blixseth's failure to seek leave of the Montana Bankruptcy Court deprives this Court of subject matter jurisdiction over claims asserted against him in his official capacity.  Kirschner's motion to dismiss is therefore **GRANTED**, and Blixseth's motion to amend is **DENIED**, on the basis that amendment would be futile.  The Court also agrees with Kirschner that the Counterclaim, which seeks $9 billion in damages from Kirschner for actions taken in the performance of his duties in the administration of the Club's bankruptcy estate, was filed in bad faith and in knowing disregard of Rule 13 and the Barton rule.  The motion for sanctions is therefore **GRANTED**.  The Court concludes that the claims in the Third Party Complaint are fatally flawed; the Credit Suisse entities' motion to dismiss is therefore **GRANTED**.  The Court's reasoning is explained in greater detail below.

LINKS: **29, 30, 41, 57**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

## II.
## BACKGROUND

### A.  THE MONTANA BANKRUPTCY PROCEEDINGS AND THE PRESENT COMPLAINT

#### 1.  THE CREDIT SUISSE LOAN TO THE CLUB, AND THE DISTRIBUTION OF THE PROCEEDS TO BLIXSETH

In 1997, Defendant Timothy Blixseth conceived an idea for an exclusive membership resort in Montana known as the Yellowstone Mountain Club ("the Club"). Together with his then-wife, Edra, Blixseth developed and operated the Club through his business entity, BGI (which became BLX), the 89-percent owner of the Club. In September of 2005, through these entities, Blixseth borrowed $375 million from Credit Suisse and with repayment secured by the Club and other assets. Allegedly with the knowledge of Credit Suisse, approximately $200 million of the loan proceeds were distributed to BLX, which was owned and controlled by Blixseth. Most of that money was in turn distributed to Blixseth who in 2006 executed two promissory notes, payable on demand, in favor of BLX in exchange for the funds. In 2008, pursuant to a Marriage Settlement Agreement ("MSA") that finalized the Blixseths' divorce, Blixseth transferred ownership of the Club and of BLX to Edra and caused BLX to release Blixseth from any liability on the Notes. (See 2/24/12 Order; Countercl. ¶¶ 8–14, 85–91.)

#### 2.  THE CLUB'S BANKRUPTCY PROCEEDINGS

Not long after these transactions were consummated, both the Club and BLX were placed into bankruptcy in Montana. A Chapter 11 plan was confirmed for the Club and the Yellowstone Club Liquidating Trust ("YCLT") was formed with Kirschner appointed by the court as trustee. In the Club's bankruptcy proceedings, the trustee prosecuted counterclaims in an adversary proceeding against Blixseth seeking damages and/or disgorgement of all funds received by Blixseth from the Credit Suisse loan proceeds, on the theory that Blixseth had breached his fiduciary duties to the debtors and that the release of his liability on the Notes constituted a fraudulent transfer. See In re Yellowstone Mountain Club, LLC, 436 B.R. 598, 641–42 (Bankr. D. Mont. 2010) ("AP-14"). On August 16, 2010, The Honorable Ralph B. Kirscher issued an adverse Memorandum of Decision against Blixseth following a two-week trial. The Montana Bankruptcy Court found, inter alia, that Blixseth's removal of $209 million from the debtors was a distribution, not a loan; Blixseth's misappropriation of the loan proceeds was constructively fraudulent under Montana's Uniform Fraudulent Transfer Act ("MUFTA") and the Bankruptcy Code; the release in the Blixseth MSA was actually and constructively fraudulent under the MUFTA; and Blixseth breached his fiduciary duties of loyalty and care to

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|----------|------------------------|------|------------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

the debtors.  The court stated that it would enter a judgment award against Blixseth in the amount of money YCLT was required to pay to satisfy certain claims, as well as the fees and costs already incurred and to be incurred by YCLT in objecting to and liquidating those claims.  Id. at 644–49, 655–671, 679.

However, Blixseth did achieve some success in that proceeding.  The Bankruptcy Court found that Credit Suisse, for the purpose of generating significant loan fees to itself, had loaned the $375 million to the Club based on an overinflated valuation of its assets and had in fact encouraged Blixseth to take a large personal distribution from the loan proceeds.  Based on those findings, the Bankruptcy Court found that Credit Suisse was just as culpable in the Club's bankruptcy as Blixseth and applied the in pari delicto doctrine to preclude any recovery by the YCLT that would benefit Credit Suisse.  Id. at 673–78.  The court observed that, "[i]n a clever legal maneuver, counsel for Credit Suisse negotiated to insulate Credit Suisse from claims by the Prepetition Lenders [who had actually advanced the loan funds to the debtors under the loan agreement] and also negotiated a position that allowed YCLT to step in and seek payment on behalf of Credit Suisse on a nonrecourse loan."  Id. at 677–78.  The court explained that it was "precluding Credit Suisse and the Prepetition Lenders from benefitting from their participation in the Yellowstone Club loan," and "prohibiting Credit Suisse and the Prepetition Lenders from converting a nonrecourse loan into a recourse loan through crafty legal negotiations with the Debtors and the Committee."  Id. at 678.

Blixseth has also succeeded, thus far, in preventing a final judgment from being entered on the August 16, 2010 Memorandum of Decision.  On August 27, 2010, the YCLT moved for reconsideration and clarification, seeking, inter alia, for the Bankruptcy Court to affix damages against Blixseth in an amount certain.  (Docket No. 49 [Conant Decl.] ¶ 11(b), Ex. 3.)  The Bankruptcy Court granted the motion on September 7, apparently without waiting for Blixseth's opposition, which was due by September 10.  (Id. ¶¶ 11(c), (d).)  The court stated that, "[i]f $40,067,962.42 is the amount that the Debtors owed to all creditors, save Credit Suisse, Cayman Islands Branch, on their petition date," as set forth in an affidavit filed by the YCLT, "the Court will grant YCLT's request by amending the Judgment to reflect an exact dollar amount."  (Id. ¶ 11(d), Ex. 4 at 4, 8–9.)  The Bankruptcy Court entered an amended judgment in the amount of $40,067,962.42, in addition to the fees and costs incurred and to be incurred in objecting to and liquidating the claims.  (See id. ¶ 11(f), Ex. 5 at 3.)

On September 23, 2010, pursuant to the YCLT's motion, the Bankruptcy Court certified the judgment for appeal directly to the Ninth Circuit, but, on January 11, 2011, the Ninth Circuit denied the certification.  (Id. ¶ 11(e), Exs. 28, 29.)  Meanwhile, both the YCLT and Blixseth appealed the September 7, 2010 order to the Montana District Court.  (Id. ¶ 11(e).)  On March 8,

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

2011, Blixseth moved to dismiss those appeals on the basis that the September 7, 2010 order was not a final appealable judgment.  The Montana District Court granted Blixseth's motion on October 11, 2011.  (Id. ¶¶ 11(f), (g), Exs. 5, 6).)

On October 26, 2011, the YCLT filed a second motion to amend the Memorandum of Decision, asking the Bankruptcy Court to reconsider some of its earlier legal and factual findings, or, at minimum, to enter a final and appealable judgment in the amount of $40,992,210.81.  This greater amount reflected additional claims that had been allowed since the YCLT's previous affidavit had been submitted, but the YCLT no longer sought fees and costs incurred in resolving the claims.  (Id. ¶ 11(h), Ex. 7 at 7–8.)  Blixseth opposed the motion, and, on March 6, 2012, the Bankruptcy Court held an evidentiary hearing, admitting into evidence 50 new exhibits from both parties.  (Id. ¶¶ 11(i), (j), (k), Exs. 8–10.)  The court also permitted the parties to submit post-hearing briefing.  In addition to challenging the proper categories of damages that may be awarded, Blixseth argued, inter alia, that the U.S. Supreme Court's decision in Stern v. Marshall, 131 S. Ct. 2594 (2011), prevents the Bankruptcy Court both from making proposed findings of fact and conclusions of law and from entering a final judgment in an action to avoid a fraudulent conveyance, such as AP-14.  (Id. ¶¶ 11(m), (o), Ex. 11.)  As of the filing of the motions that are presently before this Court, the Bankruptcy Court had not entered final judgment on the August 16, 2010 Memorandum of Decision.  (Id. ¶¶ 11(n), 12.)

**3. COLLECTION ON THE NOTES IS ASSIGNED FROM BLX TO YCLT, AND THE YCLT INSTITUTES THIS LAWSUIT**

On August 30, 2011, Judge Kirscher, while presiding over the BLX proceedings, approved the assignment of BLX's claims against Blixseth on the Notes to YCLT for purposes of collection.  (Docket No. 59 [Credit Suisse Req. Judicial Not. ("CSRJN")][1] ¶ 1, Ex. A.)  The assignment provided that the YCLT shall be entitled to 58 percent of any recovery, and that the BLX estate shall be entitled to 42 percent of any recovery, based on their respective shares of the claims against Blixseth.  (Id. ¶ B(iii).)  In the present lawsuit, YCLT seeks to set aside the release of Blixseth's liability on the Notes as a fraudulent transfer under 11 U.S.C. § 548(a) and California Civil Code § 3439.04, and to collect on the Notes under a breach of contract theory. (Docket No. 1 [Compl.].)  The Court denied Blixseth's motion to dismiss these claims earlier this year.  (See 2/24/12 Order.)

---

[1] The Court takes judicial notice, pursuant to Federal Rule of Evidence 201, of the documents requested by Third Party Defendants because all are matters of public record.  See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) ("under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record'").

LINKS: **29, 30, 41, 57**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

**B.  THE COUNTERCLAIM AND THIRD PARTY COMPLAINT**

Blixseth is apparently of the view that the best defense is a good offense.  To execute a strategy based on that philosophy, Blixseth answered the pending Complaint and attacked Kirschner in an 80-page Counterclaim that alleges conspiracy under the civil Racketeer Influenced Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 et seq., two separate claims for breach of the duty of good faith and fair dealing, and breach of contract.  (See Countercl.)  Although Kirschner filed this action in his capacity as trustee of the YCLT, the Counterclaim names him as Counterdefendant in his individual capacity.  It seeks $6 billion in treble damages under the RICO statute on the theory that Kirschner's attempt to collect on the Notes constitutes participation in a RICO conspiracy concocted and carried out by Credit Suisse, its inside noteholder, CrossHarbor Capital Partners, LLC ("CrossHarbor"), and Edra Blixseth, to defraud Blixseth of the Club and other assets.  According to Blixseth, these co-conspirators seek to lay the blame for the Club's bankruptcy at Blixseth's feet, and collect on the fraudulent Credit Suisse loan.  The Counterclaim also seeks $1 billion in damages for each of Blixseth's three contract-based claims, on the theories that (1) Kirschner seeks to collect on the Credit Suisse loan, for that entity's benefit, in contravention of the loan's non-recourse provisions against him, and in spite of the fact that the Montana Bankruptcy Court in AP-14 already prevented Credit Suisse from doing so, and (2) Kirschner seeks to collect on the Notes for BLX's benefit in contravention of that entity's release of Blixseth from liability on the Notes.  The underlying factual allegations are explained in greater detail below, and are "substantially similar" to those asserted in a lawsuit filed by Blixseth against Credit Suisse, CrossHarbor, and others in the U.S. District Court for the District of Colorado.  (Id. ¶ 129 n. 5); see CSRJN ¶ 4, Ex. D [Blixseth v. Cushman & Wakefield of Colorado, Inc., Case No. 1:12-cv-00393-PAB-KLM (D. Colo. Feb. 14, 2012].)

Blixseth also attacks five Credit Suisse entities—Credit Suisse AG, Credit Suisse Securities (USA), LLC, Credit Suisse (USA) Inc., Credit Suisse Holdings (USA) Inc., and Credit Suisse Cayman Islands Branch (together, "Credit Suisse")—in a separate Third Party Complaint. (Docket No. 27 [Third Party Compl.].)  The Third Party Complaint incorporates the underlying allegations asserted in the Counterclaim, and asserts claims against the Credit Suisse entities for contribution and unjust enrichment, in the event that Blixseth is found liable under the Complaint for payment on the Notes.  (Id. ¶¶ 13–14, 16, 22.)

**1.  THE ALLEGED CREDIT SUISSE "LOAN-TO-OWN" SCHEME**

Blixseth alleges that, beginning in 2003, Credit Suisse devised an aggressive marketing scheme, the purported "Equity Recapitalization Loan Program," aimed at high-end resorts. Through this program, the bank offered massive loans based on "Total Net Value" ("TNV")

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|----------|------------------------|------|------------------|
| Title    | Marc S Kirschner v. Timothy L Blixseth | | |

appraisals made by RICO co-conspirator Cushman & Wakefield.  The TNV appraisals were non-traditional, undiscounted projected cash-flow appraisals that did not comply with applicable federal and state law, namely the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 3331 et seq. and the Uniform Standards of Professional Appraisal Practice ("USPAP"), adopted by Montana under Montana Code §37-54-403.  To induce resort developers and owners to make these loans, Credit Suisse allowed them to take personal distributions from the proceeds, all the while misrepresenting the legality of the loans and failing to disclose the risk involved.  Credit Suisse earned large loan origination fees, and it insulated itself from risk by syndicating and securitizing the loans for sale on the secondary market—again relying on the false appraisals to induce investors to purchase the syndicated product.  Through the illegal appraisals, Credit Suisse induced the developers into a fiduciary "lending advisor" relationship, and caused them to disclose confidential financial and proprietary information to Credit Suisse and its co-conspirators, used to attract investors.  (Id. ¶¶ 16–19, 22–25, 31, 36–37, 40–43, 45, 50–52, 58, 63, 104–08, 110(a)–(e), 147.)  However, through a series of disclaimers in the lending documents, Credit Suisse transformed the relationship into a traditional lender-borrower relationship.  (Id. ¶ 109.)

Credit Suisse evaded FIRREA and USPAP, which were designed to prevent against exactly these abuses, by running the loans through its Cayman Islands "branch," which consists of a "lonely post office," while communicating with Blixseth and controlling the transaction through its New York and Boston offices.  (Id. ¶¶ 28, 62, 110(a).)  In performing the TNV appraisals, Cushman & Wakefield ignored their own internal documentation created in connection with earlier, FIRREA- and USPAP-compliant appraisals of the same properties and prevented their employees from questioning the new methodologies.  (Id. ¶¶ 64–82, 96.)  Internal communications reflect its appraisers remarking that they were "not in jail yet and still continuing to write these appraisals."  (Id. ¶ 77.)  Blixseth alleges that Credit Suisse carried out this scheme with at least 14 high-end resort developments.  (Id. ¶¶ 65, 145–46.)

Credit Suisse targeted the Club for such a loan via a cold call and sales pitch in 2004.  (Id. ¶¶ 92–94.)  Although Blixseth initially rejected Credit Suisse's offer of $150 million, he was eventually convinced, and, after he agreed to borrow this amount, Credit Suisse continued to solicit him to borrow greater sums.  Blixseth was eventually baited into borrowing $375 million for the Club, and was persuaded by Credit Suisse to take a $209 million personal distribution to "expand the Yellowstone Club brand worldwide in order to pay back the loan."  (Id. ¶¶ 21, 94, 96–97 (original emphasis)).  Blixseth alleges that he agreed to the loan in reliance on the facts that other resorts were participating in the program, and that Cushman & Wakefield had appraised the Club at a value of $1.165 billion.  (Id. ¶¶ 95, 97–98.)  This appraisal was presented to Blixseth as an "update" of Cushman & Wakefield's 2004 appraisal valuing the Club at $420

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|----------|------------------------|------|------------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

million.  (Id. ¶ 110(e)).  Even after the Club obtained the $375 million loan, Credit Suisse urged it to borrow an additional $75 million, which Blixseth rejected.  (Id. ¶¶ 55, 99, 111.)

Blixseth alleges that, when originating the loan, Credit Suisse anticipated that its terms would drive the Club into bankruptcy; indeed, it employed a "Risk Management Team . . . whose job it was to plan for and profit from the eventual default of its loan."  (Id. ¶¶ 57–61.)  In Blixseth's case, Credit Suisse planned to use CrossHarbor, a noteholder, to take over the Club in a sham bankruptcy and to create a reorganization plan that exculpated themselves from liability but made Blixseth personally liable for the loan, despite its non-recourse terms.  This plan ensured that Credit Suisse and CrossHarbor would not only gain ownership of the property for "pennies on the dollar," but could pursue Blixseth to collect much of the original loan amount, by claiming his malfeasance in accepting the loan and in using it to make a personal distribution. (Id. ¶¶ 26, 34, 38–39, 52–54.)

Blixseth alleges that, as a first-time developer with the Club, he was unfamiliar with FIRREA and TNV, relied on the international reputations of Credit Suisse and Cushman & Wakefield, relied on the advice of his own lawyers, and expected that all applicable regulations would be followed.  (Id. ¶ 29.)  He did not recognize that the true value of the Club was only $420 million, as it had been appraised in 2004, and that the combination of the $375 million loan and the $209 personal distribution resulted in a negative capitalization of the Club.  (Id. ¶ 99.) Indeed, he did not become aware of the extensive violations by Credit Suisse and Cushman & Wakefield until April 2009, in the context of the Club's bankruptcy proceedings.  (Id. ¶ 46.)

## 2. THE ALLEGED PARTICIPATION OF CROSSHARBOR, SAM BYRNE, AND EDRA BLIXSETH

Blixseth alleges that CrossHarbor, its principal, Sam Byrne, and Blixseth's ex-wife, Edra Blixseth, were co-participants in Credit Suisse's RICO conspiracy.

The Blixseths filed divorce proceedings in December of 2006.  (Id. ¶ 90.)  In 2008, CrossHarbor entered into a contract to purchase most of the Club's assets for $455 million. However, Byrne desired a "better deal" on the Club, and contacted Credit Suisse in order to "set up" Blixseth through a bankruptcy proceeding.  After Blixseth rejected Byrne's proposal to place the Club into a pre-packaged bankruptcy under the pretext that it would solve certain issues with the sale, Byrne had Edra Blixseth fabricate and forge federal grand jury target letters against Blixseth, and Byrne terminated the sale by threatening to disclose the letters to investors. CrossHarbor also purchased a portion of the Club's debt in order to become an inside noteholder, and Byrne met with the Governor of Montana to work out the political aspects of the

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

bankruptcy.  (Id. ¶ 119.)

The Edra Blixseth/CrossHarbor scheme culminated in CrossHarbor's making a $35 million short-term loan to Edra in order to enable her to receive the Club, and other Blixseth marital assets with a net value of $515 million, as part of the Blixseths' MSA.  CrossHarbor promised Edra that it would inject $100 million in new financing into the Club and that she would profit handsomely by developing the Club with CrossHarbor.  When Edra could not repay the loan due to her own precarious financial position—an eventuality that CrossHarbor had anticipated and planned for—CrossHarbor assumed operating control of the Club, caused it to become delinquent on its debts, and, on November 10, 2008, placed the Club into bankruptcy. As detailed below, Blixseth alleges that the bankruptcy proceedings have permitted CrossHarbor to acquire ownership of the Club at a heavily-discounted price, while Credit Suisse has used the proceedings to seek repayment on its loan to the Club directly from Blixseth.  Blixseth alleges that all of these plans and schemes were unknown to him at the time that he transferred ownership of the Club to Edra, that he desired only to bring an end to a contentious and expensive divorce, that he reasonably believed that Edra had sufficient financing to operate the entities that she received as part of the MSA, and that he was released from liability on the Notes in a fair exchange for the assets that Edra received.  (Id.)

### 3. THE BANKRUPTCY SCHEME

Blixseth alleges that the RICO co-conspirators have continued to perpetrate their scheme through the YCLT and the bankruptcy proceedings.  As one example, he observes that the reorganization plan called for Credit Suisse to appoint four of the seven members of the YCLT advisory board.  (Id. ¶ 49.)  CrossHarbor has appointed a fifth member.  (Id. ¶ 119(z).)  Credit Suisse and CrossHarbor are thus the largest beneficiaries within the YCLT.  (Id. ¶ 119(aa).)  The ultimate plan of reorganization called for CrossHarbor and Byrne to own the Club assets for a mere $115 million, and for Credit Suisse to have the balance of its remaining $375 million loan satisfied by a judgment against Blixseth in AP-14.  (Id. ¶ 119(w).)  The Counterclaim alleges that, thus, the YCLT was designed "to act as a straw-man for the purpose of collecting from Mr. Blixseth indirectly what [Credit Suisse] could not collect from Mr. Blixseth directly."  (Id. ¶ 119(y).)

Blixseth complains that, at every stage of the bankruptcy proceedings, his due process rights have been denied.  As one example, the Montana Bankruptcy Court, without proper notice, approved a settlement followed by a reorganization plan that exculpated Credit Suisse, CrossHarbor, Byrne, and Edra Blixseth from all liability.  These exculpation clauses and notice defects were reversed by the Montana District Court for "plain error."  (Id. ¶ 47.)  As another

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|----------|------------------------|------|------------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

example, Blixseth alleges that, throughout the course of the bankruptcy proceedings, Credit Suisse and Cushman & Wakefield have failed to produce their internal communications and have deliberately concealed the identity of material witnesses.  (Id. ¶¶ 83–84, 141(j).)  Blixseth alleges that Edra Blixseth has also concealed and destroyed evidence related to her dealings with CrossHarbor, Byrne, and Credit Suisse.  (Id. ¶ 119(cc).)

Blixseth alleges that, in addition, Byrne and Edra were able to use their political connections to quash a two-year federal criminal investigation into loan fraud by Edra and bankruptcy fraud in connection with the Club.  Specifically, Blixseth alleges that Byrne partnered with billionaire financier Ron Burkle, who has "extensive and deep personal relationships" with the Clintons and the current Assistant U.S. Attorney General, to develop and own the Club, and that Burkle used his connections at the U.S. Department of Justice to bring the investigation to a halt.  (Id. ¶ 119(x).)

### 4. KIRSCHNER'S ALLEGED ROLE IN THE RICO CONSPIRACY

According to Blixseth, Kirschner participates in the RICO conspiracy as a knowing pawn of Credit Suisse and CrossHarbor, who are attempting to collect on an illegal debt.  That is,

> Mr. Kirschner, at all times relevant, knows that in his capacity as trustee for the YCLT and its illegitimate collection efforts against Mr. Blixseth, that he is acting as the tool of and committing over[t] acts for Credit Suisse and CrossHarbor to implement and execute their on-going RICO enterprise against Mr. Blixseth.  As such Mr. Kirschner is a RICO conspirator and liable for the acts of the enterprise.

(Id. ¶ 7; see also id. ¶¶ 103, 137.)  Although the Bankruptcy Court in AP-14 has already refused to permit the YCLT to collect any money on Credit Suisse's behalf, Kirschner remains undaunted, and seeks to collect on the Notes in these proceedings, taking direction from the YCLT board, which is dominated by Credit Suisse and CrossHarbor.  (Id. ¶¶ 7, 103 & n.2.)  According to Blixseth, not only are these collection efforts in violation of the non-recourse provisions of the Credit Suisse loan, but they also seek to extract from Kirschner hundreds of millions of dollars worth of assets that he received pursuant to the MSA.  (Id. ¶ 121.)  Blixseth alleges that Kirschner is "now the primary instrumentality . . . in implementing [the Credit Suisse and CrossHarbor] scheme . . . to defraud Mr. Blixseth."  (Id.)

According to Blixseth, Kirschner has also committed his own independent predicate acts. First, he has aided the Montana Department of Revenue ("MDOR") in filing an involuntary bankruptcy petition against Blixseth in Nevada, "because Mr. Kirschner had inside connections

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|----------|------------------------|------|------------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

with the bankruptcy trustees there and [it] would provide an easy venue for Mr. Kirschner to collect on illegitimate debts on behalf of Credit Suisse." (Id. ¶ 103.) He has also "engaged in a systematic effort to interfere with Mr. Blixseth's legitimate business transactions through defaming Mr. Blixseth's business reputation to third parties and in the public media." (Id.) These efforts have included public allegations of Blixseth's "looting" the Club for his own personal benefit. (Id. ¶ 115(a).) Finally, he has made unspecified false statements under oath in the bankruptcy proceedings regarding the nature and extent of Credit Suisse's control of the YCLT and his own actions as the YCLT trustee. (Id. ¶ 122.)

### 5. THE THIRD PARTY COMPLAINT

Blixseth adopts and incorporates these allegations in his Third Party Complaint, which asserts claims for contribution and unjust enrichment against the Credit Suisse entities. The Third Party Complaint alleges that Credit Suisse is a tortfeasor jointly responsible for the allegedly fraudulent transfers. (Third Party Compl. ¶ 14.) Blixseth alleges that the YCLT seeks to recover the $200 million distribution from Blixseth for the benefit of Credit Suisse, but he contends that it would be unjust to permit that entity to enjoy the benefit of a judgment against Blixseth. According to Blixseth this is because in accepting the Credit Suisse loan on the Club's behalf, he relied on the fact that it was non-recourse loan, and because Credit Suisse has already benefitted from peddling the predatory loan to the Club by earning millions of dollars in fees for originating the loan and obtaining an ownership interest in the Club. (Id. ¶¶ 17–21.)

### 6. THE PROPOSED FIRST AMENDED COUNTERCLAIM

The proposed first amended counterclaim names Kirschner in his representative capacity; is considerably shorter; removes the RICO allegations and claim; and removes the allegation that Kirschner is "controlled" by Credit Suisse, alleging instead that he is acting on behalf of and for the benefit of Credit Suisse and BLX, as an assignee to their purported claims against him. (See Docket No. 42-1 [Proposed First Amend. Countercl.] ¶ 5.) However, it contains many of the same factual allegations regarding (1) the generation of the Credit Suisse loan transaction and the conduct of Credit Suisse to induce Blixseth's agreement to enter into the loan and to take a distribution from its proceeds; (2) the collusion between Edra Blixseth and CrossHarbor to defraud Blixseth of his assets; and (3) the formation of the YCLT to collect on the Credit Suisse loan. (Id. ¶¶ 14–69.) The proposed first amended counterclaim seeks $500 million in damages for each of the contract-based claims.

**III.**
**DISCUSSION**

LINKS: **29, 30, 41, 57**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

## A. MOTIONS TO DISMISS AND FOR LEAVE TO AMEND COUNTERCLAIM

### 1. LEGAL STANDARDS

#### a. *Rule 12(b)(1) Legal Standard*

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move to dismiss a complaint over which the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction that "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). Accordingly, a court without jurisdiction over certain claims has no choice but to dismiss them regardless of their gravity or potential validity. "The burden of establishing federal jurisdiction is on the party invoking federal jurisdiction." United States v. Marks, 530 F.3d 799, 810 (9th Cir. 2008).

#### b. *Amendment under Rule 15*

Federal Rule of Civil Procedure 15 permits a party to amend its pleading once "as a matter of course" within 21 days after serving it or 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1). Subsequently, a party may amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule directs that the court "should freely give leave when justice so requires." Id. Circuit law teaches that this policy should be "applied with extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). Federal courts consider a non-exhaustive list of factors in determining whether to grant leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

### 2. APPLICATION

Kischner moves to dismiss the counterclaim on the ground that this Court does not have subject matter jurisdiction over the claim. Kirschner claims that he is not a proper "opposing party" within the meaning of Rule 13, which governs counterclaims.

#### a. *The Barton Doctrine*

The Ninth Circuit has held that "[a] counterclaim under Rule 13 must be against an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

'opposing party.'" In re Adbox, Inc., 488 F.3d 836, 840 (9th Cir. 2007) (quoting Fed. R. Civ. P. 13(a), (b)). "Thus, a party sued by a trustee may assert a counterclaim against that trustee, but only if the trustee is an 'opposing party' within the meaning of Rule 13." Id. Moreover, "[i]t is well-established that when a party sues in his representative capacity, he is not subject to counterclaims against him in his individual capacity." Id.; see also In re Casale, 62 B.R. 899, 900 (E.D.N.Y. 1986) (in action brought by bankruptcy trustee for turnover of property to the estate, dismissing counterclaim against trustee in personal capacity for negligence and false representations, because "[i]t is fundamental that in an action brought by a party in a representative capacity, a counterclaim cannot be asserted against the plaintiff in his individual capacity").

Here because Kirschner, as trustee in bankruptcy, has acted in a representative capacity, he contends that Blixseth may not pursue the pending counterclaim, which is brought against him as an individual. This argument implicates the so-called Barton doctrine. When a party seeks to pursue claims against a bankruptcy trustee, the Ninth Circuit has held that "a party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity." In re Crown Vantage, Inc., 421 F.3d 963, 970 (9th Cir. 2005). The Circuit explained that "[t]his holding is firmly grounded in the Barton doctrine, established by the Supreme Court over a century ago, which provides that, before suit can be brought against a court-appointed receiver, 'leave of the court by which he was appointed must be obtained.'" Id. at 970–71 (quoting Barton v. Barbour, 104 U.S. 126, 127 (1881)); see also Curry v. Castillo, 297 F.3d 940, 945 (9th Cir. 2002) ("'A court other than the appointing court has no jurisdiction to entertain an action against the [bankruptcy] trustee for acts within the trustee's authority as an officer of the court without leave of the appointing court.' . . . The requirement of obtaining leave from the appointing court to sue a trustee is long-standing.") (quoting 3 Collier on Bankruptcy ¶ 323.03[3] 15th ed. rev. 2001). The Barton doctrine is equally applicable to liquidating trustees, which are "the 'functional equivalent' of the bankruptcy trustee." Crown Vantage, 421 F.3d at 973.

The Fourth Circuit has explained that allegations of intentional misconduct do not preclude application of Barton, because "bankruptcy trustees and their counsel require protection against suits that are based on unfounded allegations regardless of whether there is a claim that the alleged wrongdoing was intentional," and because the requirement that leave be sought from the bankruptcy court fulfills "the need for bankruptcy courts to be 'kept in the loop' so that they make appropriate appointments in the future." McDaniel v. Blust, 668 F.3d 153, 158 (4th Cir. 2012) (Barton doctrine barred suit against law firm retained by trustee to prosecute adversary proceeding, where suit alleged civil obstruction of justice, conversion, invasion of privacy,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|----------|----------------------|------|------------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

breach of fiduciary duty, and civil conspiracy).  Similarly, the Seventh Circuit has explained that

> Just like an equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code.  If he is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded.

Matter of Linton, 136 F.3d 544, 545 (7th Cir. 1998).  Accordingly, "[b]efore leave is given by the bankruptcy court, the claimant must demonstrate that he has a prima facie case against the trustee."  In re Messina, Bankruptcy No. 99 B 29371, 2003 WL 22271522, at *10 (Bankr. N.D. Ill. Sept. 29, 2003).

There are two recognized exceptions to the Barton doctrine.  First, the doctrine does not bar suits against a bankruptcy or liquidating trustee for ultra vires actions—actions for which the trustee is "without authority to perform . . . in any circumstances or for any purpose"—or for actions otherwise taken in the trustee's unofficial or individual capacity.  However, ultra vires is a narrowly defined concept that applies only to actions which are completely outside the scope of the trustee's duties and responsibilities.  See Lurie v. Blackwell, 285 Mont. 404, 408 (1997) (holding that Barton doctrine barred abuse of process action because the trustee did not act outside of his official capacity in seeking to enforce a foreign judgment he obtained in bankruptcy court by filing notice of the judgment in his own name because "he clearly was performing his official duties in the administration of the estate"); see also In re Davis, 312 B.R. 681, 686–87 (Bankr. D. Nev. 2004) (although "leave of court need not be sought if the trustee (or other court appointed party) is acting in excess of his or her authority or in an unofficial capacity," court was without subject matter jurisdiction to adjudicate claim that trustee and his attorney had performed their duties negligently and with bias toward debtors).

Second, under 28 U.S.C. § 959(a),

> Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property.  Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|----------|------------------------|------|------------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

28 U.S.C. § 959(a) (added emphasis).

### b. Discussion

The Counterclaim suffers from two fundamental deficiencies that require its dismissal and denial of Blixseth's motion for leave to amend. First, the Counterclaim must be dismissed because it is asserted against Kirschner in his individual capacity, in violation of Federal Rule of Civil Procedure 13. Indeed, Blixseth does not contend that the counterclaims may be asserted against Kirschner in his individual capacity, but he seeks the Court's leave to amend the Counterclaim to name Kirschner as the trustee of the YCLT. (Mem. Amend at 1.) Second, the Counterclaim must be dismissed, and Blixseth's motion for leave to amend denied because Blixseth has not sought leave from the Bankruptcy Court to file the counterclaims against Kirschner in his official capacity, in contravention of <u>Barton</u>. Amendment would thus be futile, because the amended counterclaim would also be subject to dismissal for lack of subject matter jurisdiction under <u>Barton</u>.

Here, the Counterclaim arises from and relates to Kirschner's alleged conduct while serving as the liquidating trustee of the Club's bankruptcy estate. Indeed, the theory of the Counterclaim is that, by fulfilling his duties as trustee, Kirschner is acting as a pawn in the Credit Suisse-CrossHarbor-Edra Blixseth RICO conspiracy. However, the Bankruptcy Court has retained jurisdiction "to adjudicate controversies arising out of the administration of the Estates, the implementation of this Plan, or the administration of the Liquidation Trust." (Docket No. 32 [Kirschner's Req. Judicial Not. ("KRJN")][2] ¶ 8, Ex. H [Third Amended Joint Plan of Reorganization Proposed by the Debtors], Art. X ¶ 10.1.8, p. 44.) Thus, the Court lacks subject matter jurisdiction over the counterclaims in the absence of the Bankruptcy Court's permission for Blixseth to file them in this Court. Particularly in light of the serious allegations levied against Kirschner and the astronomical amount of damages sought, application of the <u>Barton</u> doctrine here serves its exact purposes: to protect the trustee so that he can focus on carrying out his duties, and to protect the assets of the estate.

Blixseth proffers a number of arguments as to why <u>Barton</u> does not bar his assertion of the counterclaims against Kirschner in his official capacity here. None is persuasive.

---

[2] The Court takes judicial notice, pursuant to Federal Rule of Evidence 201, of this document, because it is a matter of public record. <u>See Lee</u>, 250 F.3d at 689. Blixseth makes objections to numerous of the documents for which Kirschner requests judicial notice, but does not object to the Court's taking of judicial notice of this document. (<u>See</u> Docket No. 48 [Blixseth's Objections to KRJN].)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

### (1) Estoppel

First, Blixseth argues that Kirschner is estopped from seeking dismissal based on the Barton doctrine because he has previously argued to this Court that, in prosecuting this action, he was not acting as a bankruptcy trustee, but simply as a creditor seeking to enforce a promissory note assigned to him.   The argument to which Blixseth refers was made in opposition to Blixseth's contention that Kirschner lacked standing to collect on the cancelled Notes, which represented money Blixseth owed BLX.   Kirschner argued that

> Blixseth also moves to dismiss the Complaint under FRCP 12(b)(1) on the basis that Marc Kirschner lacks standing to bring the claims asserted in the Complaint.   This argument is based on a fundamental mischaracterization of the capacity in which Kirschner has filed suit.   As noted in the Complaint, Kirschner is indeed the trustee of the YCLT, which is a liquidating trust created in conjunction with the confirmed plan of reorganization of the Yellowstone Club debtors.   YCLT is the largest creditor in the BLX bankruptcy, and it has a vested interest in trying to maximize the assets of the BLX bankruptcy estate.   The claims asserted in the Complaint, however, are being brought by YCLT on behalf of the BLX bankruptcy estate.

(Docket No. 16 at 13 (added emphasis).)   According to Blixseth, Kirschner made this argument in order to avoid the application of the rule, from Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416 (1972) and Williams v. California 1st Bank, 859 F.2d 664 (9th Cir. 1988), that a bankruptcy trustee lacks standing to collect monies not owed to the bankruptcy estate.   Further, according to Blixseth, the Court accepted this argument in its 2/24/12 Order; thus, the "logical conclusion . . . is that [Kirschner] is attempting to enforce the BLX notes in some other, 'unofficial' capacity," and is not protected by Barton.   (Docket No. 51 [Opp. Dismiss Countercl.] at 1–2; see also Mem. Amend at 6–7.)   Blixseth argues that, had the Court not accepted Kirschner's prior position, it would have dismissed Kirschner's Complaint for lack of standing, and no counterclaim would have been required.   Kirschner is thus "unequivocally attempting to gain a tactical advantage" over Blixseth, by bringing the suit and forcing him to file counterclaims, then threatening him with sanctions.   (Opp. Dismiss Countercl. at 3–4.)   According to Blixseth, he filed the counterclaims against Kirschner in his personal capacity because, based on Kirschner's argument that Caplin and Williams were inapplicable, he "was under the good faith impression that in fact Mr. Kirschner was not filing this suit as a bankruptcy trustee and therefore in his unofficial or personal capacity."   (Id. at 7 (original emphasis).)

The estoppel argument fails because Kirschner never argued that he has standing in this suit in some capacity other than as trustee for the YCLT, and the Court most certainly did not

LINKS: **29, 30, 41, 57**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|----------|------------------------|------|------------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

accept such a position in the 2/24/12 Order. Rather, the Court determined that <u>Caplin</u> and <u>Williams</u> were inapplicable because, in this action, Kirschner indeed seeks monies owed to the YCLT estate. (<u>See</u> 2/24/12 Order at 9–11.) The Court clearly explained that

> Here, because YCLT is BLX's largest creditor, any monies owed by Blixseth to the BLX estate are, in a very real sense, monies owed to YCLT. Moreover, pursuant to the assignment, any claims of BLX against Blixseth have validly become YCLT's claims, and BLX may no longer assert them. The Court therefore has no concerns that Kirschner, <u>as trustee for the YCLT</u>, lacks standing to avoid the Release and to collect on the Notes.

(<u>Id.</u> at 10 (added emphasis).) Because Kirschner took and the Court accepted no prior inconsistent position as to the capacity in which he brings this suit, there is no basis for applying judicial estoppel here, and <u>Barton</u> is fully applicable.

### (2) The § 959(a) Argument

Second, Blixseth contends that, to the extent that Kirschner now claims to prosecute this action as a bankruptcy trustee, because Kirschner is "purporting to carry[] on the business of BLX in enforcing those Notes," under 28 U.S.C. § 959(a), Blixseth was not required to obtain leave before asserting the <u>contractual</u> counterclaims arising from his attempt to enforce the Notes. (<u>Id.</u> at 2.)

Precedent teaches that the § 959(a) exception to <u>Barton</u> does not apply here. The Ninth Circuit has explained that, "[b]y its terms, this limited exception applies only if the trustee or other officer is actually operating the business, and only to 'acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise.'" <u>Crown Vantage</u>, 421 F.3d at 971–72 (citation omitted). However, "'[s]ection 959(a) does not apply to suits against trustees for administering or liquidating the bankruptcy estate.'" <u>Id.</u> at 972 (citation omitted). Here, by attempting to collect sums owed to the Club for the benefit of the bankruptcy estate, Kirschner is plainly not carrying on the Club's ordinary business or pursuing it as an operating enterprise. Indeed, Blixseth does not argue that Kirschner is pursuing the <u>Club's</u> business; rather, he argues that Kirschner is pursuing the business of <u>BLX</u>. Kirschner is not the trustee for the BLX estate, nor is he taking any action to pursue the business of that entity, which is in Chapter 11 liquidation, as an operating enterprise.

### (3) The Rule 13(a) Argument

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | | Date | November 1, 2012 |
|---|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | | |

Third, Blixseth insists that he must be able to assert the contractual counterclaims, which he deems to be compulsory under Federal Rule of Civil Procedure 13(a), without seeking leave of the Bankruptcy Court because the Complaint seeks to collect on a debt owed to the Club, and, under 11 U.S.C. § 541(a)(1), claims asserted by the bankruptcy trustee are subject to the same claims and defenses as could be asserted against the debtor.  That is, the contractual counterclaims are not subject to <u>Barton</u> because they do not involve allegations of "wrongful conduct," but arise only out of "Kirschner's failure to act appropriately as a purported creditor of Mr. Blixseth's in purported [possession] of the BLX Notes."  (<u>Id.</u> at 7–9; <u>see also</u> Mem. Amend 8–9;  Docket No. 53 [Reply Amend] at 2–3.)

Relatedly, Blixseth suggests that the application of the <u>Barton</u> doctrine serves no purpose in this matter because Kirschner has voluntarily submitted himself to the Court's jurisdiction, and that the Court is obliged to exercise jurisdiction over the Counterclaims.  According to Blixseth, this is because the <u>Barton</u> doctrine is a judicially-created limit on subject matter jurisdiction, and the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), which <u>must</u> be exercised.  (Opp. Dismiss Countercl. at 5–6.)

Blixseth cites no persuasive authority in support of his contention that the <u>Barton</u> doctrine does not apply to counterclaims, whether compulsory or not, or that it requires allegations of "wrongful conduct" by the trustee for its application.  For example, his reliance of <u>In re Merrick</u>, 175 B.R. 333 (9th Cir. BAP) is misplaced.  In that case, the debtors sued certain defendants in state court on a fraud claim, and the defendants moved for summary judgment and for costs.  The debtors then filed for bankruptcy, listing the state court action as an asset of their estates, and the state court entered summary judgment in favor of the defendants and awarded costs.  The Chapter 7 trustee subsequently filed a complaint in the bankruptcy court for willful violation of the automatic stay on the basis of the defendants' postpetition pursuit of dismissal of the state court action and costs.  However, the Ninth Circuit held that the defendants had not violated the automatic stay, which did not prevent them from continuing to defend against a pre-bankruptcy lawsuit.  The court reasoned that the trustee was not prevented from continuing to prosecute the pre-bankruptcy lawsuit instituted by the debtor, and that,

> Given this freedom for the debtor or the trustee to prosecute the debtor's claims, an equitable principle of fairness requires a defendant to be allowed to defend himself from the attack without imposing on him a gratuitous impediment in dealing with an adversary who suffers no correlative constraint.  The automatic stay should not tie the hands of a defendant while the plaintiff debtor is given free rein to litigate.

<u>Id.</u> at 338.  However, this case does not suggest that Blixseth should be free to prosecute his

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

counterclaims against Kirschner without the constraints of Barton. It does not involve the assertion of claims against a bankruptcy trustee, and it does not address or cite to Barton.

Blixseth also ignores case law that supports Kirschner's assertion of Barton. For example, Crown Vantage applied Barton in circumstances resembling those here. In that case, the liquidating trustee appointed pursuant to a confirmed Chapter 11 plan moved for an injunction restraining the debtor's corporate parent, its counsel, and other entities from prosecuting a Delaware action in which they sought declaratory relief against the trustee. Plaintiffs contended that the trustee had filed fraudulent conveyance, conversions and other related claims in lawsuits in California that violated the terms and conditions of a settlement agreement executed by the debtor and its corporate parent. The Ninth Circuit concluded that Barton barred the Delaware declaratory relief action, and affirmed the injunction against that suit. See 421 F.3d at 967–971, 977. Like the contractual counterclaims that Blixseth seeks to assert here, the allegations levied against the trustee in Crown Vantage did not involve "wrongful conduct," and were asserted in response to affirmative claims prosecuted by the trustee. Still, the entities seeking to press these claims against the trustee in another forum were required to seek the bankruptcy court's leave. That conclusion makes sense because the objective of the rule is to protect the trustee from being forced to defend himself against claims made arising out of his work as trustee, no matter the procedural device used to assert those claims.

Finally, the Court easily rejects Blixseth's argument that it is obliged to exercise subject matter jurisdiction over the counterclaims pursuant to 28 U.S.C. § 1332(a). By definition, Barton will be applied to claims for which the Court otherwise has subject matter jurisdiction.

### (4) The "Representative Capacity" Argument

Blixseth has one final theory as to how Barton may be avoided: Kirschner "can be named in his representative capacity without being named as the bankruptcy trustee," because the YCLT is created under Montana law, and, under Montana law, Kirschner "is the trustee of that trust independent of the Bankruptcy Code." (Opp. Dismiss Countercl. at 7; see Conant Decl. ¶ 24, Ex. 12 [Liquidation Trust Agreement] § 1.1 (forming the YCLT under Montana law).) Thus, according to Blixseth, Kirschner may be named as a defendant in an amended counterclaim in his capacity as a trustee of a trust created under Montana law. Blixseth offers no further explanation and not a single case citation for the proposition that this approach would avoid the Barton constraint, and the Court cannot conclude that it does. Rather, Kirschner prosecutes the Complaint in his capacity as the liquidating trustee of the YCLT, appointed by the Bankruptcy Court, in order to collect assets that are alleged to be owed to the bankruptcy estate. The

LINKS: **29, 30, 41, 57**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|----------|----------------------|------|------------------|
| Title    | Marc S Kirschner v. Timothy L Blixseth |  |  |

proposed amended counterclaims seek damages from the estate arising from its attempt to collect those assets. Barton is fully applicable.

Accordingly, because the Court lacks subject matter jurisdiction over the counterclaims, the Court **DISMISSES** the Counterclaim and **DENIES** Blixseth's motion for leave to amend. The Court does not reach Kirshner's remaining arguments for dismissal under Rule 12(b)(6) for failure to state a claim.

**B. MOTION FOR SANCTIONS**

Kirschner moves for the imposition of sanctions against Blixseth and his attorneys, pursuant to 28 U.S.C. § 1927 and the Court's inherent powers, in the amount of the attorney fees and costs he incurred in moving to dismiss the Counterclaim, on the bases that: (1) the Counterclaim was intentionally and improperly filed against Kirschner personally in contravention of Rule 13; (2) Blixseth and his counsel recklessly filed the Counterclaim without seeking leave of the Bankruptcy Court with knowledge of the Barton doctrine; and (3) the Counterclaim has no basis in fact or law and was filed for the improper purpose to harass and intimidate Kirschner as trustee of the YCLT. (Mem. Sanctions at 1–2.)

**1. RELEVANT BACKGROUND**

The Parties, and particularly Blixseth, have produced tomes of evidence that they ask the Court to consider in connection with the sanctions motion. The vast majority of this evidence pertains to the conduct of Blixseth and numerous other persons who are not parties to this action. Kirschner seeks to prove that, in various other fora, Blixseth has argued and alleged that every person adverse to him, from Credit Suisse, CrossHarbor, and Edra Blixseth, to the Bankruptcy Judge, the Montana Governor, and officials at the U.S. Department of Justice, are involved in a vast conspiracy against him, and that the Counterclaim is merely Blixseth's frivolous attempt to add to this list the last person that he could think of: the bankruptcy trustee. In opposition, Blixseth seeks to prove that Credit Suisse, CrossHarbor, and Edra Blixseth really did conspire to defraud him of his assets; that the Montana Bankruptcy Court really has acted unfairly against him; and that his Counterclaim against Kirschner really was made in good faith.

The Court has reviewed this evidence carefully, and describes it in some detail below. However, the issue ultimately for the Court's determination is far simpler than the Parties have made it. The question before the Court is whether, by filing the Counterclaim against Kirschner in his personal capacity and without seeking leave of the Bankruptcy Court, Blixseth and his counsel intentionally ignored Rule 13 and Barton, thereby unreasonably and vexatiously

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

multiplying this proceeding and demonstrating bad faith.  As explained in greater detail below, the Court finds that, in filing the Counterclaim, Defendant and his counsel did ignore applicable legal rules of which they were aware, unreasonably and vexatiously multiplying these proceedings.  Although the conduct of Blixseth and his counsel outside this proceeding is relevant to the question of their bad faith, the Court does not find it to be determinative.

### a.  Blixseth's Approach to the Bankruptcy Proceedings

As described in the Background section to the present order, Kirschner and Blixseth have a history of adversity in the Montana Bankruptcy Court.  In the Club's bankruptcy proceedings, each has experienced both success and setbacks.  On the evidence produced in connection with the present sanctions motion, and as is plain from the allegations made in the Counterclaim, Blixseth is of the view that the various bankruptcy proceedings pending before Judge Kirscher in Montana—including the bankruptcy proceedings for the Club, BLX, and Edra Blixseth—are rigged against him.  For example, in a September 14, 2010 text message to Edra Blixseth, Blixseth wrote that "you . . . [Sam] [B]yrne . . . and the corrupt judge are all going down . . . You thought you were covered with a corrupt judge . . . ."  (KRJN, Ex. J at 24.)[3]  On November 18, 2010, he filed a pro se motion in the Club's bankruptcy proceedings to disqualify Judge Kirscher, arguing that he had pre-judged the proceedings, invited and entertained ex parte advocacy against him, ruled on important motions against him before he could oppose them, and entered the $40 million judgment against him before he could respond to the motion to reconsider.  (RJN, Ex. A at 1–2.)[4]  Kirscher denied the motion, <u>In re Yellowstone Mountain</u>

---

[3] Blixseth objects to the Court's taking judicial notice of the document containing the text message, which was attached as an exhibit to a complaint filed by Edra Blixseth's bankruptcy trustee in her Chapter 7 bankruptcy proceedings to, <u>inter alia</u>, set aside the MSA.  Blixseth argues that judicial notice is improper, because Kirschner is "asking this Court to accept the truth and the apparent innuendo associated with this text message[]"; Kirschner has not provided a complete record to place the message in context; the message is not relevant to the sanctions motion; and the message is improper character evidence.  (Blixseth's Objections to KRJN at 6–7.)  These objections are **OVERRULED**.  Under Federal Rule of Evidence 201, the Court may take judicial notice of the existence of public and court records, but may not credit <u>disputed</u> facts found in them.  <u>Lee</u>, 250 F.3d at 689–90. Here, the Court takes judicial notice of the fact that, in a text message to Edra, Blixseth referred to Judge Kirscher as a "corrupt judge."  Blixseth does not dispute the authenticity of the document, or the fact that he made this statement.  Although Blixseth complains that Kirschner has not produced the other exhibits to the complaint, he does not explain why fairness requires that these also be produced.  <u>See</u> Fed. R. Evid. 106.  Blixseth's remaining objections concerning relevance under Federal Rules of Evidence 401 and 403 and improper character evidence under Rule 404 are without merit.

[4] Blixseth objects to the Court's taking judicial notice of the fact that he filed the motion to disqualify and made the statements in it.  He also argues that it is impermissible character evidence under Rule 404(a) and is

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

Club, LLC, No. 08-61570-11, 2011 WL 766979 (Bankr. D. Mont. Feb. 25, 2011), and Blixseth's appeal of this denial is pending before the Montana District Court.  In his appeal, Blixseth contends that the motion to disqualify is based on admitted ex parte contacts between Judge Kirscher, his law clerks, and various of Blixseth's adversaries in AP-14, and he attaches the evidence on which he relies for this Court's benefit.  (Conant Decl. ¶¶ 33–34, Ex. 31 [Appeal Brief Re: Disqualification], Ex. 34, Ex. 36 ¶¶ 4–8 & Ex. A, Ex. 37.)  In a hearing before Judge Kirscher in the Club's bankruptcy proceedings on March 6, 2012, Blixseth's attorney Michael Flynn, who does not represent Blixseth here, accused Judge Kirscher of discussing the proceedings with the Governor of Montana and of misplacing evidence.  Judge Kirscher adamantly denied both accusations, and returned to the bench with the allegedly missing evidence.  (KRJN, Ex. B [3/6/2012 Transcript of Proceedings] at 19–20, 61–62.)[5]

In October of 2011, Blixseth's lawyer in this and other proceedings, Christopher Conant, sent e-mails to the lawyer for Edra Blixseth's bankruptcy trustee, David Cotner, asserting that he had violated the Montana Rules of Professional Conduct by filing a baseless adversary proceeding against Blixseth in Edra Blixseth's bankruptcy proceedings to set aside the MSA.  Conant wrote that Edra's bankruptcy trustee had filed the complaint in the Montana Bankruptcy Court, rather than in California state court, only because Judge Kirscher is "openly biased against Mr. Blixseth," and he asked Cotner to confirm whether Edra's bankruptcy trustee had had ex parte communications with Judge Kirscher.  (KRJN, Ex. K at Ex. A at 1, 3.)[6]  Conant now states that he made this inquiry because Edra's trustee had told Blixseth that he had a close

---

irrelevant under Rules 401 and 403, and that, under Rule 106, Kirschner is required to "provide all of the exhibits, documents, transcripts and proceedings associated therewith."  (Blixseth's Objections to KRJN at 4.)  These objections are **OVERRULED**.  The fact that Blixseth filed the motion to disqualify and made the statements in it are proper subjects of judicial notice under Rule 201, and Blixseth's evidentiary objections are without merit.  The motion is plainly relevant, and the Court considers that its probative value outweighs any prejudice to Blixseth. The Court does not consider the motion as evidence of Blixseth's "character," or to prove that he has acted in accordance with such character.

[5] Blixseth objects to the Court's taking judicial notice of the fact that these events occurred in the Bankruptcy Court, on the grounds that the transcript of proceedings is improper character evidence and irrelevant, and that only a limited portion has been produced.  (Blixseth's Objections to KRJN at 4–5.)  These objections are **OVERRULED**, as above.

[6] Blixseth objects to the Court's taking judicial notice of the fact of these communications, which were attached as an exhibit to a response to a motion filed in Edra Blixseth's bankruptcy proceedings.  Blixseth repeats his objections under Federal Rules of Evidence 106, 401, 403, and 404.  (Blixseth's Objections to KRJN at 7.) These objections are **OVERRULED**, as above.  Moreover, neither Blixseth nor his counsel dispute the authenticity of the document, or deny that the communications occurred.

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|----------|------------------------|------|-------------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

relationship with Kirscher and could communicate with or send messages to him, and that this statement by Edra's trustee was consistent with evidence in Conant's possession showing something of a "cozy" relationship between Kirscher and other Montana bankruptcy counsel, namely counsel for the Club. (Conant Decl. ¶ 35, Ex. 35 (November 2009 e-mail from Club's counsel, Andy Patten, to Kirscher's law clerk, asking whether, if he "give[s] the court a heads up about a new case . . . it [can] be kept confidential until the actual filing," and receiving a response of "Absolutely Andy").) Blixseth's other lawyer in this and other proceedings, Philip Stillman, added in an e-mail to Cotner that Blixseth "intends to file a Motion for Sanctions pursuant to Rule 11 . . . against every single person and lawyer that continues to assert these frivolous claims against him," and will "hold you and your firm and the Trustee liable for all costs, attorney's fees and other damages . . . through sanctions and a malicious prosecution motion." (KRJN, Ex. K at 2–3.) Conant eventually served on Cotner, but did not file, an F.R.B.P. 9011 motion for sanctions. (Conant Decl. ¶ 32, Ex. 30.)

Blixseth's own bankruptcy proceeding in Nevada was initiated by the filing of an involuntary petition by the MDOR in 2011. Blixseth stated, in his opposition to a motion to quash subpoenas in that proceeding, that Byrne met with the Governor of Montana in order to gain support for his bankruptcy plans for the Club, and that, "[n]ot surprisingly, during the Yellowstone Club bankruptcy, the Governor made public statements critical of Mr. Blixseth." (KRJN, Ex. E at 7–8.)[7] Blixseth also stated his belief that the moving parties—CrossHarbor, Byrne, and others—"had numerous discussions with high ranking officials from the State of Montana outside of MDOR, relating to Movants' and Montana's common adversary," and that "these discussions played a role in MDOR's unprecedented filing of an involuntary bankruptcy petition." Id. at 12–13.

In an affidavit executed by Blixseth on February 27, 2012 and submitted to the U.S. House of Representatives Committee on the Judiciary—produced by Blixseth in this proceeding—he states that, in 2011, he spoke with a "senior status Bankruptcy Judge" in Montana—not Judge Kirscher—who agreed that bankruptcy fraud had been committed by Edra Blixseth and others in connection with the Club's bankruptcy, and who made a criminal referral to the Montana Office of the U.S. Department of Justice. (Conant Decl. ¶ 14, Ex. 15 [Blixseth Affidavit] ¶ 3.) A Federal Task Force was assigned to the case, and throughout the course of the investigation, Blixseth was in communication with the investigators as the "victim" of the criminal conduct. (Id. ¶ 2.) Blixseth states that he asked the investigators to look into the conduct of Judge Kirscher due to "various inconsistent rulings and . . . odd behavior." (Id. ¶ 5.)

---

[7] Blixseth similarly objects to the Court's taking judicial notice of the statements made in this filing under Federal Rules of Evidence 106, 401, 403, and 404. These objections are **OVERRULED**, as above.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|----------|----------------------|------|------------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

At some point, he learned that Edra was the subject of a Department of Justice target letter, and states that he was told by the investigators that "the Judge is the Big Catch here."  (Id. ¶ 6.)  Ultimately, however, the Department of Justice declined to prosecute Edra—despite the Federal Task Force's recommendation that she be prosecuted for loan fraud.  (Id. ¶¶ 6, 8.)  Blixseth states that he believes that Ron Burkle, who was the Club's controlling owner at the time of Blixseth's affidavit, "used his contacts at the very top of the Department of Justice to immediately stop the investigation."  (Id. ¶¶ 9–10.)  Blixseth states that, since then, the "multiple crimes perpetrated against [him] and countless others . . . have gone unanswered."  (Id. ¶ 11.)

In AP-14, Blixseth had also argued that Stephen Brown, a lawyer who had represented him in the loan transaction with Credit Suisse and in the divorce proceedings, and who subsequently became Chairman of the Unsecured Creditors Committee, had violated Blixseth's attorney-client privilege, and that these violations "had tainted every aspect of the trial in this matter."  436 B.R. at 636.  The committee complied with the Bankruptcy Court's request to produce copies of e-mail communications; the court "carefully reviewed each of the emails and found . . . absolutely no evidence that Brown violated Blixseth's attorney-client privilege."  Id. at 637.  The court also found that "Blixseth's arguments on the point were nothing but baseless allegations intended to derail the proceedings."  Id.

### b.  Blixseth's Theories Regarding Kirschner's Role in the Alleged Conspiracy Against Him

Blixseth's theory that Kirschner himself has been a pawn or a player in the vast conspiracy against him was aired in AP-14.  In the Final Pretrial Order, Blixseth set out for trial the following two issues, among others:

> Whether the Trust's counterclaims against Blixseth are barred by the Trust's lack of standing because it is controlled by a party who participated in the allegedly bad behavior;

> Whether the Trust's counterclaims against Blixseth are barred as a result of proximate causation by the conduct of other parties, including but not limited to, the collusion of Edra Blixseth, Sam Byrne and CrossHarbor Capital to thwart a purchase of the Debtors by filing a Chapter 11 petition in bad faith.

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

(KRJN, Ex. F, §§ II(C)(14), VIII(26), (29)).[8]  As noted above, Credit Suisse is the largest beneficiary of the YCLT and has appointed four of the seven members of the YCLT's Advisory Board, see In re Yellowstone Mountain Club, LLC, 436 B.R. at 675 n.58, which exists to "advise and direct" Kirschner.  (Conant Decl. ¶ 13(b); Liquidation Trust Agreement at § 2.13.) Pursuant to the Trust Agreement, Kirschner

> shall consult regularly with the Trust Advisory Board when carrying out the purposes of the Trust and shall obtain approvals from the Trust Advisory Board as required under th[e] Trust Agreement and shall follow the directions of the Trust Advisory Board to the extent not inconsistent with th[e] Trust Agreement.

(Id. § 5.13.)  Also pursuant to the Trust Agreement, YCLT was required to be represented in the bankruptcy proceedings by the same local counsel that represented Credit Suisse.  (Id. § 5.4); see In re Yellowstone Mountain Club, LLC, 436 B.R. at 674.  Nonetheless, addressing Blixseth's contention that he was not getting a "fair shake" in the Club's bankruptcy proceedings because YCLT was controlled by Credit Suisse, Judge Kirscher found that

> YCLT is only a successor of the Debtors.  Blixseth has shown no evidence to suggest any wrong doing by the Debtors.  Similarly, YCLT is not a successor in interest to Edra and the Court, to date, has not agreed with Blixseth's grand conspiracy theory regarding Byrne and Edra.  Thus, the Court is not convinced that YCLT has unclean hands in this matter.  Moreover, while Credit Suisse was permitted to appoint four of the seven members to the Trust Advisory Board, the Court is not convinced that Credit Suisse controls YCLT.  The Court also agrees with YCLT that no basis exists whatsoever upon which any misconduct that may have been engaged in by Credit Suisse should be imputed upon YCLT.

Id. at 675.

In support of the allegation in Blixseth's Counterclaim that Kirschner provided assistance to the MDOR's filing of an involuntary bankruptcy petition against Blixseth in Nevada in pursuit of his collection efforts on behalf of Credit Suisse, Blixseth has produced an internal MDOR email, composed prior to the filing of the petition, in which the MDOR's counsel explains that she had a "long conversation" with Kirschner, and that

---

[8] Blixseth objects to the Court's taking judicial notice of this document "to establish the fact of what was and what was not actually litigated in AP-14."  (Blixseth's Objections to KRJN at 5–6.)  Because the Court does not take judicial notice of the document for this purpose, this objection is **OVERRULED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

He and his counsel have been chasing Blixseth for a while. Further, and what I didn't know, the trustee has already filed avoidance actions against [Blixseth] for all of the asset transfers that occurred in 2007 and 2008. The trustee has already taken an asset deposition of [Blixseth]. He and I agreed that any bankruptcy of Blixseth would inherit his avoidance action, which is great because it alleviates my limitations concerns. He also had a lot to say about the venue. He believes that Nevada would be the best venue for a couple of reasons - 1. the largest known corporate holdings per Blixseth's depo is a Nevada company. 2. the trustee has had several large cases in Nevada and had good experiences with the NV trustee choices.

(Conant Decl. ¶ 14 n.3, Ex. 16 at 2.)

In opposition to the sanctions motion in this proceeding, Blixseth has produced hundreds of pages of evidence in support of the allegations in the Counterclaim that CrossHarbor and Edra Blixseth conspired to defraud him of his assets. (See id. ¶¶ 14, 32 n.6, Exs. 13–15, 33.) Much of this evidence was apparently excluded from AP-14 as irrelevant, but was admitted on March 6, 2012. (See id. ¶ 15, Exs. 18–25.) Although the Court has reviewed this evidence, it is not discussed in detail here. This is because Blixseth has not drawn the Court's attention to a <u>single page</u> of this evidence referring to actions taken by Kirschner or supporting an allegation that he participated in any way in the alleged Edra Blixseth/CrossHarbor scheme.

Prior to the filing of the Complaint in this lawsuit, on September 20, 2011, Stillman wrote to Kirschner, asserting various theories as to why the Complaint was frivolous and in bad faith. (Docket No. 30-2 [Glasser Decl., Ex. 1] at 1–4.) Stillman warned that "if you intend to file this action, please give notice to your insurance carriers of Mr. Blixseth's intended claim against you, your firm, and all attorneys cooperating in the filing of your frivolous and bad faith complaint." (Id. at 4–5.)[9]

---

[9] Blixseth contends that this letter is absolutely privileged under section 47(b) of the California Civil Code and may not be relied upon by the Court. (Docket No. 50 [Opp. Sanctions] at 3, 9.) The privilege under section 47(b) "applies to 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" Aronson v. Kinsella, 68 Cal. Rptr. 2d 305, 309–310 (Ct. App. 1997) (quoting Silberg v. Anderson, 50 Cal. 3d 205, 212 (1990)). Yet Blixseth also relies on the contents of the letter in his own opposition to the sanctions motion. (See Opp. Sanctions at 5 ("Mr. Stillman's letter, attached to the Glasser Decl. [a]s Exhibit 1, describes in detail why YCLT's Complaint is frivolous and in bad faith.").) Accordingly, the Court considers that the privilege has been waived.

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|----------|------------------------|------|-------------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

### c. The Prior Dismissal under <u>Barton</u> of Blixseth's Suit against the Chairman of the Unsecured Creditors Committee

On June 8, 2011, Blixseth sued nearly all the attorneys and the law firms adverse to him in the Club's bankruptcy proceedings, and primarily Brown for alleged misconduct while he sat as Chair of the Unsecured Creditors Committee, as well as Byrne and CrossHarbor, in the Montana District Court, seeking indemnification for the judgment in AP-14.  Conant, with two other lawyers, served as Blixseth's counsel in that case.  Blixseth's claims included legal malpractice, breach of fiduciary duty, fraud, breach of contract, equitable indemnification, comparative indemnity, contributory malpractice for failing to disclose conflicts of interest, conspiracy, and aiding and abetting the commission of torts.  The Montana District Court summarized the allegations as follows:

> The thrust of [Blixseth's] complaint is that Attorney Brown wrongfully sat as Chair of the Unsecured Creditors Committee and engaged in misconduct while he was Chair.  Brown represented Blixseth in various pre-petition matters, including a loan transaction with Credit Suisse and Blixseth's divorce negotiations with his wife, Edra.  Blixseth claims that, as Chair of the Committee, Brown took positions that conflicted with the advice that he had previously given Blixseth in these matters and that he used confidential client information to Blixseth's detriment.  For example, Blixseth claims that Brown initially approved the use of the Credit Suisse loan proceeds and the inclusion of a release in the marital settlement agreement but then reneged on those positions once he became Chair of the Committee.  He also claims that one result of Brown's conduct was that CrossHarbor Capital Partners—which Blixseth claims aided and abetted Brown—was able to purchase the Yellowstone Club at a substantially discounted cost because of the breach.

> As part of the bankruptcy proceedings, the Bankruptcy Court addressed the Credit Suisse loan and the marital settlement agreement and concluded that (1) Mr. Blixseth fraudulently misappropriated the proceeds from the Credit Suisse loan and (2) the release in the marital settlement agreement was fraudulent.  <u>Yellowstone Mt. Club</u>, 436 B.R. 598.  Blixseth now claims that Brown, on account of his bad legal advice, should indemnify him for the Bankruptcy Court's judgment.

<u>Blixseth v. Brown</u>, 470 B.R. 562, 565–66 (D. Mont. Mar. 5, 2012).

On March 5, 2012, the Montana District Court found that it lacked subject matter jurisdiction over the complaint, because all claims were subject to the <u>Barton</u> doctrine.  The

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

Court reasoned that Blixseth had initiated litigation in a forum outside the Bankruptcy Court against a court-approved officer—Brown—for actions and positions he took as Chairman of the Unsecured Creditors Committee, for example, using information from his previous representation of Blixseth against him.  Id. at 565–68.  The court found that Barton applied equally to Brown's co-defendants, because "the nature of Blixseth's claims against them is based solely on their alleged conspiracy with Brown or their aiding and abetting him while he was Chair of the Unsecured Creditors Committee."  Id. at 567.  The court also found that the exception to Barton under 28 U.S.C. § 959(a) was inapplicable, because "the thrust of Blixseth's claims are based on Lawyer Brown's conduct as Chair of the Unsecured Creditors Committee—and not the ongoing operation of any of Blixseth's businesses."  Id. at 572.

Blixseth filed the present Counterclaim four days after the Montana District Court dismissed Blixseth v. Brown pursuant to Barton, on March 9, 2012.  (See Docket No. 19.)  This filing was stricken for technical deficiencies; Blixseth re-filed the Counterclaim on March 26, 2012.  Conant, who represented Blixseth in Brown, was listed as Blixseth's attorney of record on the caption page of the Counterclaim, and the Counterclaim was signed by him.  (Docket No. 26.)  On April 11, 2012, Kirschner moved to dismiss the Counterclaim and for the imposition of sanctions, setting the hearing for these motions on June 4.  (Docket No. 29.)  On April 27, 2012, Blixseth's counsel, Conant, sought Kirschner's agreement to the filing of an amended counterclaim, removing the RICO claim and naming Kirschner as Counterdefendant in his capacity as trustee of the YCLT.  (Conant Decl. ¶ 5, Ex. 2.)  Conant states that, in a subsequent phone conversation, Kirschner's counsel agreed to withdraw the sanctions motion only if Blixseth would stipulate to the dismissal of the Counterclaim with prejudice.  (Id. ¶ 5.)  On May 4, 2012, Blixseth moved the Court to amend the Counterclaim.  (Docket No. 41.)  He also applied to the Court ex parte to continue the hearing on Kirschner's motions to dismiss and for sanctions, so that his motion for leave to amend could be heard first; the Court denied the ex parte application.  (Docket No. 44; Docket No. 47 [5/10/12 Order].)

Blixseth's attorney, Conant, has filed a declaration that includes a lengthy explanation as to why, although he considered the Barton doctrine prior to filing the Counterclaim, he continues to believe that it does not apply.  This explanation largely rehashes the arguments discussed above and attempts to attest to Conant's good faith in making these arguments.  First, Conant professes that he was sincerely misled by Kirschner's purported previous position, and the Court's acceptance of it, that, in prosecuting the Complaint, Kirschner was not acting in his official capacity as a bankruptcy trustee for the YCLT, but was instead acting as an ordinary creditor.  He continues to believe that Kirschner was able to avoid the application of the rule from Caplin, 406 U.S. 416, and Williams, 859 F.2d 664, only by taking this position, and he finds it unfair that Kirschner now takes the opposite position and seeks to impose sanctions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

against him. (Conant Decl. ¶¶ 17–19, 22–23.) Conant states that he believed that Kirschner would be judicially estopped from seeking <u>Barton</u> protection, based on his prior inconsistent position. (<u>Id.</u> ¶ 21.) Second, Conant states that, to the extent that Kirschner now validly asserts his status as a bankruptcy trustee, he continues to believe in good faith that he was not required to seek leave of the Bankruptcy Court to file the Counterclaim because (1) under 28 U.S.C. § 959(a), Kirschner is purporting to carry on the business <u>of BLX</u> in attempting to enforce the notes, insulating the contractual counterclaims from <u>Barton</u>; and (2) because the RICO claim alleges knowing unlawful conduct against Kirschner, <u>Barton</u> protection does not apply. (<u>Id.</u> ¶ 20.) Third, Conant attests to his belief that <u>Barton</u> may be avoided altogether by naming Kirschner as Counterdefendant in his capacity as trustee of a trust created under Montana law, rather than as bankruptcy trustee, as Blixseth has sought to do in the proposed first amended counterclaim. (<u>Id.</u> ¶ 24.)

## 2. LEGAL STANDARDS

Under 28 U.S.C. § 1927, an <u>attorney</u> "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "To be sanctionable under § 1927, therefore, counsel's conduct must multiply the proceedings in both an 'unreasonable and vexatious manner.'" <u>In re Girardi</u>, 611 F.3d 1027, 1060–61 (9th Cir. 2010) (quoting <u>B.K.B. v. Maui Police Dep't</u>, 276 F.3d 1091, 1107 (9th Cir. 2002)). The Ninth Circuit has alternatively stated that sanctions under this provision require a showing of subjective bad faith, <u>see</u> <u>New Alaska Dev. Corp. v. Guetschow</u>, 869 F.2d 1298, 1306 (9th Cir. 1989), and that a finding of mere recklessness alone suffices, <u>see</u> <u>B.K.B.</u>, 276 F.3d at 1107; <u>Fink v. Gomez</u>, 239 F.3d 989, 993 (9th Cir. 2001). Although these standards seem inconsistent, case law makes clear that "a finding that the attorneys recklessly raised a <u>frivolous</u> argument which results in the multiplication of the proceedings is . . . sufficient to impose sanctions under § 1927." <u>In re Girardi</u>, 611 F.3d at 1062 (original emphasis); <u>see also</u> <u>In re Keegan Management Co.</u>, 78 F.3d at 436 ("Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent.") ". . . [I]n the contexts of § 1927, frivolousness should be understood as referring to legal or factual contentions so weak as to constitute objective evidence of improper purpose." <u>In re Girardi</u>, 611 F.3d at 1062.

Federal courts also have inherent power to impose sanctions against <u>attorneys</u> and <u>parties</u> for bad faith conduct in litigation. <u>Chambers v. NASCO</u>, 501 U.S. 32, 43 (1991). The court's inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

cases." Id. But the inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power, squeezed from the need to make the court function." Id. at 42. "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." Roadway Express, Inc. v. Piper, 447 U.S. 753, 764 (1980). The court may award attorney fees as sanctions under its inherent power against a party who has acted in bad faith, vexatiously, wantonly or for oppressive reasons. Chambers, 501 U.S. at 45–46. Although recklessness by itself does not justify sanctions under the court's inherent power, recklessness in combination with other factors, such as knowledge of the applicable legal rule, may make such sanctions appropriate. Fink, 239 F.3d at 994; B.K.B., 276 F.3d at 1106. A court may not invoke its inherent powers to sanction a party or its counsel without a specific finding of bad faith or conduct tantamount to bad faith. In re Keegan, 78 F.3d at 436.

Sanctions under Section 1927 and the Court's inherent powers address issues pertaining to the conduct of the litigation and not the merits of the case, Bryant v. Military Dept. of Mississippi, 597 F.3d 678, 694 (5th Cir. 2010) (Section 1927); Fink, 239 F.3d at 991–92 (inherent powers), and imposition of such sanctions requires evidence that the attorney or party acted with an "improper motive, or [with] reckless disregard of the duty owed to the court." Proctor & Gamble Co. v. Amway Corp., 280 F.3d 519, 525–26 (5th Cir. 2002). In general, "[u]nlike sanctions under Rule 11, the focus under § 1927 is on the entire course of conduct, rather than on any particular papers." Mont-Bell Co. Ltd v. Mountain Hardwear, Inc., No. C-96-1644-FMS, 1998 WL 101741, at *1 (N.D. Cal. Feb. 23, 1998).

**3. APPLICATION**

### a. Section 1927 Sanctions May be Applied to a Counterclaim

Blixseth first argues that sanctions may not be imposed pursuant to § 1927 for the filing of a counterclaim, because a counterclaim is an "initial pleading." Its filing cannot, therefore, "multiply the proceedings," as required under § 1927. (Opp. Sanctions at 7–8.) This argument is without merit.

The Ninth Circuit in In re Keegan Management Co. Securities Litigation stated that, because Section 1927 "authorizes sanctions only for the 'multipli[cation of] proceedings,' it applies only to unnecessary filings and tactics once a lawsuit has begun"; accordingly, the Circuit has "twice expressly held that § 1927 cannot be applied to an initial pleading." 78 F.3d at 435 (discussing sanctions imposed for the reckless filing of a complaint). Thus, "[t]he filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

be sanctioned pursuant to § 1927." Id. Although a counterclaim may be characterized as an initial pleading, see Port of Stockton v. W. Bulk Carrier KS, 371 F.3d 1119, 1120–21 (9th Cir. 2004) (counterclaim is an initial pleading); C.D. Cal. R. 3-2 (counterclaim is a "claim-initiating document"), the Ninth Circuit has not precluded the application of § 1927 to counterclaims that unreasonably and vexatiously multiply the pleadings. See Mirch v. Frank, 266 Fed. Appx. 586, 588 (9th Cir. 2008) ("a third-party complaint"—also characterized by the Local Rules as a "claim-initiating document"—"is not an initial pleading because it cannot arise absent an underlying case"; vexatious third-party complaint in that action "multiplied the proceedings by precipitating the motion to dismiss and [withdrawal of the defendant's counsel]"); Mont-Bell, 1998 WL 101741, at *1 (imposing § 1927 sanctions for a litany of conduct "indicat[ing] a reckless disregard of [the attorney's] duty to this Court," including "filing and unreasonably pursuing certain defenses and counterclaims"); see also Riddle & Assoc., P.C. v. Kelly, 414 F.3d 832, 837 (7th Cir. 2005) (district court abused discretion in not imposing § 1927 sanctions for the filing of a frivolous counterclaim that acted to "complicate this already far too complicated and absurdly protracted litigation to the cost of" plaintiff and its counsel) (internal quotation marks and citation omitted); but see Nystrom v. TREX Co., Inc., 424 F.3d 1136, 1150 (Fed. Cir. 2005) (stating that the Fourth Circuit has found as a matter of law that the filing of a single complaint cannot support the imposition of § 1927 sanctions, and refusing to impose sanctions for the filing of an original and amended counterclaim).

Thus, under Ninth Circuit law, this Court is not precluded from imposing § 1927 sanctions for the vexatious or bad faith filing of a counterclaim.

### b. *Sanctions are Warranted against Blixseth and his Counsel*

#### (1) Blixseth's Arguments

Blixseth argues that sanctions are not warranted because the Counterclaim was not filed in bad faith or with reckless disregard for applicable legal rules. Blixseth contends that each counterclaim states a legal claim, is well-grounded in facts already in his possession, and is made not for an improper purpose, but only to obtain compensation for damages he has suffered and to avoid potential waiver of compulsory counterclaims. (Opp. Sanctions at 6, 17–18.) He denies that he improperly named Kirschner as Counterdefendant in his individual capacity, arguing that a trustee may be sued in his personal capacity for ultra vires actions, and the Counterclaim alleges that Kirschner participated in a RICO conspiracy; caused BLX to breach its contract with Blixseth and interfere with Blixseth's contract with Edra Blixseth; and has improperly attempted to help Credit Suisse collect on the loan to the Club and to circumvent the Bankruptcy Court's application of Blixseth's in pari delicto defense. (Opp. Sanctions at 13.)

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

Blixseth also denies that he is somehow precluded from asserting the counterclaims by Judge Kirscher's findings in the Memorandum of Decision in AP-14—that the YCLT had not engaged in wrongdoing, and there is no evidence of a conspiracy against Blixseth between CrossHarbor and Edra Blixseth—because these findings have not been, and will likely never be, entered into a final judgment.  Blixseth contends that, moreover, Judge Kirscher's finding that Credit Suisse improperly sought to collect on the Club's loan against Blixseth via the YCLT supports his claims that Kirschner is acting improperly by attempting to collect on the Notes in this action.  (Id. at 15–17.)  He argues that, in any event, "in a show of good faith," he has attempted to amend the Counterclaim to name Kirschner as Counterdefendant in his official capacity as trustee of the YCLT, to avoid the Rule 13 problem, and to withdraw the RICO counterclaim, in order not to "expand the scope of this case now."  (Id. at 3 n.6; see also id. at 13, 18–19.)  However, he complains that his effort to make these amendments was unreasonably rebuffed by Kirschner, who refused to withdraw the sanctions motions unless he stipulated to dismissal of the counterclaims with prejudice.  (Id. at 19.)

Blixseth denies that he and his counsel should have known that this Court would lack subject matter jurisdiction under Barton, based on the Montana District Court's decision in Blixseth v. Brown, because Brown entailed "completely different facts," involving Blixseth's former attorney who then became Chairman of the Unsecured Creditors Committee and sued Blixseth on transactions that he had previously worked on.  (Id. at 14 & n.12.)  Blixseth also insists that he reasonably believed that Barton was inapplicable, on the basis that Kirschner argued to this Court that, in prosecuting the Complaint, he was not acting as a bankruptcy trustee, but merely as a creditor.  (Id. at 14.)

Blixseth argues that, in any event, sanctions are not warranted against his counsel in this proceeding, Conant and Stillman, because the only evidence offered against them is that they threatened a malicious prosecution action against Edra Blixseth's bankruptcy trustee in the context of her separate bankruptcy proceedings—to which YCLT is not even a party—and that Stillman stated that Blixseth would sue Kirschner if he did not withdraw the Complaint in this action.  All other evidence concerns actions taken by Blixseth himself or his other attorneys in other proceedings.  (Opp. Sanctions at 3, 9–10.)  Blixseth contends that Kirschner has improperly filed the sanctions motion for the purpose of harassing him and his counsel, by seeking an unspecified amount of attorney fees and selectively producing to this Court documents from and statements made in other proceedings.  (Id. at 3–4.)

Finally, Conant complains that, due to various personal circumstances, he cannot afford to pay any sanctions imposed against him.  (Conant Decl. ¶ 36.)

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

        (2) Discussion

        The Court is persuaded that sanctions are warranted against Blixseth and Conant, for the following reasons.  First, the Counterclaim, which was signed by Conant, was improperly filed against Kirschner in his personal capacity, notwithstanding the clear dictates of Rule 13 that, where a party sues in a representative capacity, counterclaims may not be filed against him in his personal capacity.  Thus, had Blixseth legitimately desired to sue Kirschner in his personal capacity, he was required to bring the claims in a separate lawsuit.  Second, Blixseth now seeks to assert certain of the counterclaims against Kirschner in his official capacity—and, by extension, against the Club's bankruptcy estate—without having sought leave of the Montana Bankruptcy Court, exhibiting blatant disregard for the Barton doctrine.  Indeed, a mere four days before Conant filed the Counterclaim in this action on Blixseth's behalf, another lawsuit by Blixseth, in which Conant represented him, was dismissed by the Montana District Court on Barton grounds.

        The Court finds Blixseth's and Conant's arguments that they did not intentionally ignore Rule 13 and Barton utterly unpersuasive.  First, the argument that they were somehow misled into naming Kirschner in his personal capacity and believing Barton to be inapplicable is frivolous, and rests on a continued attempt to distort the holdings of Caplin and Williams that this Court has already rejected, as well as a distortion of the holding of this Court's 2/24/12 Order.  Kirschner plainly filed the Complaint in this action as trustee for the YCLT, as indicated on the Complaint's caption page.  Moreover, as explained above, Kirschner never argued to this Court, and this Court never accepted, that he was suing, not as the trustee for the YCLT, but as a personal creditor to Blixseth, or in some other, unspecified unofficial capacity.  Rather, the Court concluded that Kirschner, acting as YCLT trustee, has standing to seek to collect on the Notes because these represent monies allegedly owed to the bankruptcy estate.  (See 2/24/12 Order at 9–11.)  The Court explicitly stated that Blixseth's Caplin/Williams argument "relies on a misunderstanding of bankruptcy law."  (Id. at 9.)  However, notwithstanding the clear holding of the 2/24/12 Order, Blixseth continues to insist that Kirschner lacks standing to seek to collect on the Notes as trustee for the YCLT, and that the Court necessarily concluded that he was acting in some other capacity.  This argument is absurd, and finds no basis in the 2/24/12 Order.

        Nor can the Court agree that Blixseth and his counsel could not have anticipated, from the dismissal of Brown v. Blixseth, that Barton would apply here.  As here, Brown involved the assertion of claims against a court-approved officer for actions taken within his official capacity.  The Brown court's explication of the Barton doctrine—and the inapplicability of the exception provided for under 28 U.S.C. § 959(a)—parallel those required here.  If anything, the instant action presents a more straightforward application of Barton, in that all allegations made against

**LINKS: 29, 30, 41, 57**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

Kirschner involve actions taken in his official capacity, whereas in <u>Brown</u>, Blixseth's claims also involved actions Brown had taken as Blixseth's personal attorney, prior to his approval as Chairman of the Unsecured Creditors' Committee. Accordingly, the dismissal of <u>Brown</u> should have placed Blixseth and Conant on notice that the claims against Kirschner were subject to <u>Barton</u>. Yet they proceeded, undaunted, to file the Counterclaim, without seeking leave of the Bankruptcy Court, four days after the dismissal of <u>Brown</u>. When the initial filing was rejected for technical deficiencies, they re-filed it two weeks later. It is difficult to infer anything other than an intent to vex, annoy and harass from this conduct.

The Court must also reject the contention that Blixseth and Conant believed that <u>Barton</u> was inapplicable because the claims against Kirschner are for <u>ultra vires</u> actions. Notably, Blixseth does not oppose the application of <u>Barton</u> by claiming that Kirschner's actions were <u>ultra vires</u>, even though that is one of the limited exceptions to the rule. But he could not have made the argument then, and the argument serves him no better in this context. The counterclaims against Kirschner do not allege that he acted beyond the scope of responsibilities, but rather, that in carrying out his duties of administering the estate he acted as the pawn of other purported co-conspirators. <u>See</u> In re Markos Gurnee Partnership, 182 B.R. at 224 (explaining that, in order to determine whether trustee's acts were <u>ultra vires</u>, the court must "examine what the general scope of the trustee's duty was, and whether the conduct alleged to violate state law fits within that scope"). Moreover, as already noted, Rule 13 would require that Blixseth bring any true <u>ultra vires</u> action against Kirschner in his personal capacity in a separate lawsuit.

Accordingly, the Court must conclude that Blixseth and Conant frivolously filed the Counterclaim against Kirschner in his personal capacity, and without seeking leave of the Bankruptcy Court to pursue the claims against Kirschner in his official capacity. In doing so, they acted with knowledge of and with reckless disregard for the strictures of Rule 13 and the <u>Barton</u> doctrine.

However, there is more: the voluminous evidence produced by the Parties regarding conduct by Blixseth and his counsel in other proceedings provides further support for the conclusion that the Counterclaim was filed with improper motive. It is apparent to the Court that Blixseth is involved in numerous contentious legal battles in various fora with Kirschner and a host of other entities and persons. In these other proceedings, he has achieved some success, and has suffered significant defeats. It is also apparent, however, that Blixseth views all of these proceedings as part of a vast conspiracy in which his opponents, the courts, and persons holding political office are aligned against him. His response has been to engage in scorched earth tactics in which he has launched attacks against every perceived adversary.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

Blixseth's view that Kirschner, as YCLT liquidating trustee, is "in" on the conspiracy was aired in AP-14 and was soundly rejected by Judge Kirscher.  Although this Court may not afford preclusive effect to the Bankruptcy Court's finding, which has not been entered into a final judgment, that case provides context for the conduct now under assessment by this Court.  And that context suggests that the pursuit of the conspiracy claim here is brought not because it is meritorious but for the purpose of vexation and harassment.  The Court finds it noteworthy that, even though Blixseth is the individual to whom $200,000,000 in loan proceeds was distributed as an alleged element of the conspiracy, even his receipt of these funds is now presented as an element of an elaborate scheme involving Credit Suisse, CrossHarbor, and Edra Blixseth to trick him into causing the Club to enter into an unconscionable loan to drive the Club into bankruptcy and foist the repayment obligation on him.  Blixseth goes to great lengths to demonstrate that his allegations against these entities and persons are based in fact.  But these efforts are largely beside the point and do little to persuade the Court that the $6 billion RICO counterclaim ***against Kirschner*** was brought in good faith.  Indeed, Kirschner is mentioned in only a few paragraphs in the Counterclaim, and his role is limited to performing his duties as trustee to pursue collection of the estate's assets, with alleged knowledge of the illegitimacy of his actions.  The alleged independent predicate acts by Kirschner—aiding the MDOR in its efforts to file an involuntary bankruptcy petition against Blixseth in Nevada, making public statements against Blixseth, and giving testimony against Blixseth in the bankruptcy proceedings—are merely actions taken in the performance of his duties.  Thus, in view of (1) the reckless disregard by Blixseth and Conant for applicable legal rules in filing the Counterclaim; (2) the magnitude of the counterclaims—improperly asserted against Kirschner in his personal capacity—and the paucity of the allegations and evidence against Kirschner; and (3) the "scorched earth" approach demonstrated by Blixseth in the bankruptcy and other proceedings, the Court can only conclude that the Counterclaim was filed in bad faith.

Nor is the Court persuaded that Conant's personal financial circumstances prevent the imposition of sanctions against him.  Although the Ninth Circuit has explained that the sanctioned party's ability to pay is "another factor relevant in determining reasonableness" of a specific fee award, <u>Matter of Yagman</u>, 796 F.2d 1165, 1185 (9th Cir. 1986), here, sanctions are limited to Kirschner's reasonable fees and costs incurred in responding to the bad faith filing of the Counterclaim.

Accordingly, Kirschner's motion for sanctions is **GRANTED**, and sanctions are imposed against Blixseth and Conant in the amount of Plaintiff's reasonable fees and costs incurred in moving to dismiss the Counterclaim, moving for sanctions, and opposing Blixseth's motion for leave to amend the Counterclaim.  Because Conant apparently faces financial constraints, the Court **ORDERS** that he is responsible for one-third of fees, and Blixseth is responsible for two-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|----------|------------------------|------|-------------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

thirds. No sanctions are imposed against Stillman, because he did not sign the Counterclaim or represent Blixseth in <u>Brown</u>, and because no sanctions are specifically sought against him. Plaintiff is **ORDERED** to file a fee request, setting forth the specific amount sought to be recovered and supported by relevant billing records and other appropriate documentation, **no later than Monday, November 19, 2012.** The Court will review this request and thereafter enter an appropriate order.

## C. MOTION TO DISMISS THIRD PARTY COMPLAINT

The Credit Suisse entities move to dismiss the claims for contribution and unjust enrichment, asserted against them in Blixseth's Third Party Complaint, under Rule 12(b)(6). Credit Suisse argues that (1) the claims are not ripe because no judgment has been entered against Blixseth; (2) Blixseth's allegations do not state a cognizable claim for contribution because Kirschner's Complaint does not seek a judgment against joint tortfeasors; (3) Blixseth's allegations do not state a claim for unjust enrichment, because this is not a recognized claim under California law, and, moreover, Credit Suisse would not be unjustly enriched by receiving any distribution under the Plan of Reorganization confirmed by the Bankruptcy Court; (4) the claim for unjust enrichment is barred by the doctrine of bankruptcy preemption, because it improperly attempts to attack the confirmed Plan of Reorganization; and (5) Blixseth lacks standing to assert claims based on the loan agreement between Credit Suisse and the Yellowstone Club, and any claims under the loan agreement were previously released in the Plan of Organization. Credit Suisse argues, additionally, that venue is improper in California for any claims arising out of the loan agreement, because the agreement contains a forum selection clause in favor of New York; thus, the Third Party Complaint must also be dismissed under Rule 12(b)(3). (Docket No. 57 [Credit Suisse Mem. Dismiss].)

### 1. RULE 12(B)(6) LEGAL STANDARD

A complaint may be dismissed if it fails to state a claim upon which relief can be granted. <u>See</u> Fed. R. Civ. P. 12(b)(6). On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all factual allegations pleaded in the complaint, and construe them "in the light most favorable to the nonmoving party." <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337–38 (9th Cir. 1996); <u>see also</u> <u>Stoner v. Santa Clara County Office of Educ.</u>, 502 F.3d 1116, 1120–21 (9th Cir. 2007). Dismissal under Rule 12(b)(6) may be based on either (1) a lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. <u>SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.</u>, 88 F.3d 780, 783 (9th Cir. 1996) (citing <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984)).

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

2. **APPLICATION**

a. *Contribution*

The right of contribution arises under section 875 of the California Code of Civil Procedure.  See Am. Motorcycle Assn. v. Superior Court, 20 Cal. 3d 578, 601 (1978); Coca-Cola Bottling Co. v. Lucky Stores., Inc., 14 Cal. Rptr. 2d 673, 677 n.6 (Ct. App. 1992).  Under that provision,

> (a) Where a money judgment has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them as hereinafter provided.

> (b) Such right of contribution shall be administered in accordance with the principles of equity.

> (c) Such right of contribution may be enforced only after one tortfeasor has, by payment, discharged the joint judgment or has paid more than his pro rata share thereof.  It shall be limited to the excess so paid over the pro rata share of the person so paying and in no event shall any tortfeasor be compelled to make contribution beyond his own pro rata share of the entire judgment.

Cal. Civ. Code § 875.

Notwithstanding Credit Suisse's numerous arguments for dismissal, Blixseth's claim for contribution fails at a basic level: there is no judgment entered on Kirschner's Complaint against two or more joint tortfeasors, and no such judgment is presently prospective.  This is because the Complaint seeks to set aside an allegedly fraudulent release and to collect on two promissory notes from Blixseth alone.  California law does not recognize a right of one joint tortfeasor to bring others into an action in order to assert a statutory claim for contribution against them.  Gen. Elec. Co. v. State of Cal. ex rel Dept. Pub. Works, 108 Cal. Rptr. 543, 548 (Ct. App. 1973) ("Cross-complainants' argument, that section 875 is consistent with their right to now bring the state and county cross-defendants into the action, with the right of contribution to be perfected after judgment is also invalid.  There is no such right in one joint tortfeasor to himself bring in the others."); In re Worldcom, Inc., 372 B.R. 159, 167 (Bankr. S.D.N.Y. 2007) (interpreting section 875, and stating that, "Here, Worldcom, a defendant, is attempting to bring in a cross-defendant for contribution, which is not permitted according to California case law.")  Thus, unless and until Kirschner names the Credit Suisse entities as co-defendants, Blixseth has no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|----------|------------------------|------|------------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

cognizable claim for contribution against them.  The claim for contribution is therefore **DISMISSED without leave to amend**.

### b. Unjust Enrichment

"There is a split of authority in California whether unjust enrichment is a cause of action." Dahon N. Am., Inc. v. Hon, No. 2:11–cv–05835 ODW (JCGx), 2012 WL 1413681, at *12 (C.D. Cal. Apr. 24, 2012).  According to one line of cases, unjust enrichment is an independent cause of action with two elements: (1) receipt of a benefit and (2) unjust retention of the benefit at the expense of another.  See, e.g., Lectrodryer v. SeoulBank, 91 Cal. Rptr. 2d 881, 883 (Ct. App. 2000).  The other line of cases maintains that "unjust enrichment is not a cause of action, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." Manantan v. Nat'l City Mortg., No. C–11–00216, 2011 WL 3267706, at *6 (N.D. Cal. July 28, 2011).

However, even assuming that unjust enrichment may be asserted as an independent cause of action, the Third Party Complaint fails to state such a claim under the standard articulated by California courts.  "To prove that receipt was unjust, it usually must be shown that 'the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust.'"  Arroyo v. Aurora Bank, FSB, No. EDCV 11-2063 DOC (JEMx), 2012 WL 628205, at *8 (C.D. Cal. Feb. 24, 2012) (quoting Dinosaur Development, Inc. v. White, 265 Cal. Rptr. 525, 528 (Ct. App. 1989)).  Blixseth argues that "Credit Suisse received a huge benefit through peddling a predatory loan upon Mr. Blixseth through obtaining enormous fees as well as ultimately obtaining ownership and control of the Yellowstone Club through a non-recourse loan to the principles of Yellowstone, Mr. Blixseth," and that, "[b]y allowing the YCLT to seek payment of the Notes, which are directly related to the Credit Suisse Loan to Yellowstone Club, this Court will be allowing [Credit Suisse] to receive an unjust benefit at the expense of Mr. Blixseth."  (Docket No. 66 [Opp. Dismiss Third Party Compl.] at 13.)  Here, however, should the YCLT collect on the Notes, any distribution to the Credit Suisse entities will be made pursuant to the Plan of Reorganization, which has been confirmed by the Montana Bankruptcy Court.  Its retention will thus not be unjust.  Blixseth's claim for unjust enrichment is therefore **DISMISSED with prejudice**.

**IV.**
**CONCLUSION**

For the reasons set forth above, the motions to dismiss are **GRANTED**.  Blixseth's motion for leave to amend the Counterclaim is **DENIED**.  Kirschner's motion for sanctions is **GRANTED** against Blixseth and Conant, with Blixseth responsible for two-thirds of the total

LINKS: 29, 30, 41, 57

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | November 1, 2012 |
|----------|------------------------|------|-------------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

award and Conant responsible for one-third.  Kirschner is **ORDERED** to file a specific request for fees and costs incurred in moving to dismiss the Counterclaim, moving for sanctions, and opposing Blixseth's motion for leave to amend the Counterclaim, supported by billing records and other appropriate documentation, **no later than Monday, November 19, 2012.**

**IT IS SO ORDERED.**