LINKS: 94, 99

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-08283 GAF (SPx) | Date | June 18, 2014 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Stephen Montes Kerr | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff : | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**          **(In Chambers)**

### ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.
### INTRODUCTION

This lawsuit arises out of a bankruptcy proceeding filed in the District of Montana. Plaintiff Marc S. Kirschner ("Kirschner") is the trustee for the Yellowstone Club Liquidating Trust ("YCLT"), a trust formed under a bankruptcy reorganization plan for debtor Yellowstone Mountain Club, LLC (the "Club"). Defendant Timothy Blixseth ("Blixseth") is the Club's former owner, and the former owner of BLX Group, Inc. ("BLX"), which was a debtor of the Club. The complaint seeks to set aside, under federal and state law, an allegedly fraudulent release and to recover on two promissory notes (the "Notes"), totaling approximately $200 million, executed by Blixseth in favor of BLX. The funds were received by BLX from the Club from the proceeds of a $375 million loan made by Third Party Defendants, various Credit Suisse entities ("Credit Suisse"). In bankruptcy proceedings involving BLX, the bankruptcy court approved the assignment of the original Notes from BLX to YCLT for purposes of collection. YCLT has made a demand on Blixseth under the Notes, but the Notes have not been paid. In earlier proceedings in this Court, Blixseth unsuccessfully sought dismissal of the pending action. (See Docket No. 1 [Compl.]; Docket No. 18 [2/24/12 Order].)

Presently before the Court are cross motions for summary judgment. (Docket No. 95 [Blixseth's Memorandum in Support of Motion for Summary Judgment ("Blixseth Mem.")]; Docket No. 99-1 [YCLT's Memorandum in Support of Motion for Summary Judgment ("YCLT Mem.")].) YCLT, as assignee of BLX's claims on the Notes, argues that summary judgment should be entered in its favor with respect to its first two claims for fraudulent transfer under state and federal law pursuant to the doctrine of collateral estoppel. Specifically, YCLT argues

LINKS: 94, 99

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | June 18, 2014 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

that, based on the findings of the Montana bankruptcy court in an adversary proceeding between Blixseth and YCLT, on behalf of the Club, Blixseth is collaterally estopped from relitigating the issue of whether he released himself from liability on the Notes with the actual intent to hinder, delay, and defraud his creditors. Because the release must be set aside as a fraudulent transfer, YCLT urges that it is entitled to enforce the Notes, and that judgment should be entered in its favor for the remaining principal balance and interest due on the Notes because Blixseth breached the Notes by failing to pay.

In his motion for summary judgment, Blixseth asserts that YCLT's complaint should be barred under the doctrines of res judicata and judicial estoppel because, according to Blixseth, these claims were already litigated in the Montana bankruptcy court adversary proceeding and the California Superior Court divorce proceedings between Blixseth and his ex-wife, Edra. But if the complaint is allowed to proceed, Blixseth argues that judgment should be entered in his favor because YCLT cannot show that the release constituted a fraudulent transfer, and thus cannot prevail on its breach of promissory note claim.

For the reasons set forth in detail below, the Court **GRANTS** YCLT's motion for summary judgment and **DENIES** Blixseth's motion for summary judgment.

**II.**
**BACKGROUND**

**A. THE DISBURSEMENT OF THE CREDIT SUISSE LOAN FROM THE YELLOWSTONE MOUNTAIN CLUB TO BLIXSETH AND BLX**

In 1997, Defendant Timothy Blixseth conceived an idea for an exclusive membership resort in Montana known as the Yellowstone Mountain Club, LLC ("the Club"). (Docket No. 99-2 [Plaintiff's Statement of Undisputed Facts ("PSUF")] ¶ 4.) Together with his then-wife, Edra, Blixseth developed and operated the Club through his business entity, Blixseth Group, Inc. ("BGI") (which later became BLX), the majority owner of the Club. (Id.) In September 2005, Credit Suisse loaned $375 million to the Club with repayment secured by the Club property and other assets. (Id. ¶ 5.) Allegedly with the knowledge of Credit Suisse, approximately $200 million of the loan proceeds were distributed to BLX, which was owned and controlled by Blixseth. (Id. ¶¶ 3, 6.) Most of that money was in turn distributed to Blixseth, who in 2006 executed two promissory notes in the amounts of $58,305,147.60 and $140,819,333.28, payable on demand, in favor of BLX in exchange for the funds. (Id. ¶¶ 7-10.)

LINKS: 94, 99

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | June 18, 2014 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

In 2008, pursuant to a Marriage Settlement Agreement ("MSA") that finalized the Blixseths' divorce, Blixseth transferred ownership of the Club and of BLX to Edra and caused BLX to release Blixseth from any liability on the Notes. (Id. ¶¶ 20-23, 32.) Specifically, the "Assumption Agreement," executed by Edra in her capacity as President of BLX, provided that Edra would assume liability on the Notes and that "[i]n consideration of the assumption of the [BLX] Indebtedness by [Edra] . . . [BLX] hereby releases [Blixseth] from any and all claims, obligations or liabilities associated with the [BLX] Indebtedness." (Docket No. 99-5 [Declaration of Steven L. Hoard ("Hoard Decl.")], Ex. 9 ¶¶ 3-4.) Pursuant to this agreement, Edra also executed an "Amended and Restated Promissory Note," which allegedly superseded the BLX Notes. (PSUF ¶ 22.) The BLX Notes were marked "Superseded by Replacement Note," and were purportedly delivered to Blixseth and his counsel in the divorce proceedings. (Id.) Additionally, in conjunction with the Assumption Agreement, the Blixseths executed a "Mutual Waiver and Release Agreement" (the "Release"), in which both Edra and Blixseth, as well as the corporate entities to which they obtained ownership in the MSA, received full and comprehensive releases from the other's known and unknown claims. (Id. ¶ 21; Hoard Decl., Ex. 5.) All of these actions occurred contemporaneously in conjunction with the consummation of the MSA on August 13, 2008, and will be treated as one transaction purportedly releasing Blixseth from liability on the Notes. (See Hoard Decl., Exs. 5-9.)

**B. THE CLUB'S BANKRUPTCY PROCEEDINGS**

Not long after these transactions were consummated, both the Club and BLX were placed into bankruptcy in Montana. (PSUF ¶¶ 1, 11.) A Chapter 11 plan was confirmed for the Club and YCLT was formed with Kirschner appointed by the court as trustee. (Id. ¶ 1.) In the Club's bankruptcy proceedings, the trustee prosecuted counterclaims in an adversary proceeding against Blixseth seeking damages and/or disgorgement of all funds received by Blixseth from the Credit Suisse loan proceeds, on the theory that Blixseth had breached his fiduciary duties to the debtors and that the release of the debtors' claims against Blixseth constituted a fraudulent transfer. See In re Yellowstone Mountain Club, LLC, 436 B.R. 598, 641–42 (Bankr. D. Mont. 2010) ("AP-14"). On August 16, 2010, The Honorable Ralph B. Kirscher issued an adverse Memorandum of Decision against Blixseth following a two-week trial. The Montana Bankruptcy Court found, inter alia, that Blixseth's removal of $209 million from the debtors was a distribution, not a loan; Blixseth's misappropriation of the loan proceeds was constructively fraudulent under Montana's Uniform Fraudulent Transfer Act ("MUFTA") and the Bankruptcy Code; the release in the Blixseth MSA was actually and constructively fraudulent under the MUFTA; and Blixseth breached his fiduciary duties of loyalty and care to the debtors. The court stated that it would enter a judgment award against Blixseth in the amount of money YCLT was required to pay to satisfy certain claims, as well as the fees and costs already incurred and to be incurred by YCLT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | June 18, 2014 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

in objecting to and liquidating those claims.  Id. at 644–49, 655–671, 679.

However, Blixseth did achieve some success in that proceeding.  The Bankruptcy Court found that Credit Suisse, for the purpose of generating significant loan fees to itself, had loaned the $375 million to the Club based on an overinflated valuation of its assets and had in fact encouraged Blixseth to take a large personal distribution from the loan proceeds.  Based on those findings, the Bankruptcy Court found that Credit Suisse was just as culpable in the Club's bankruptcy as Blixseth and applied the in pari delicto doctrine to preclude any recovery by YCLT that would benefit Credit Suisse.  Id. at 673–78.  The court observed that, "[i]n a clever legal maneuver, counsel for Credit Suisse negotiated to insulate Credit Suisse from claims by the Prepetition Lenders [who had actually advanced the loan funds to the debtors under the loan agreement] and also negotiated a position that allowed YCLT to step in and seek payment on behalf of Credit Suisse on a nonrecourse loan."  Id. at 677–78.  The court explained that it was "precluding Credit Suisse and the Prepetition Lenders from benefitting from their participation in the Yellowstone Club loan," and "prohibiting Credit Suisse and the Prepetition Lenders from converting a nonrecourse loan into a recourse loan through crafty legal negotiations with the Debtors and the Committee."  Id. at 678.

On December 5, 2012, the Bankruptcy Court entered a Second Amended Judgment in the amount of $40,992,210.81 against Blixseth and in favor of YCLT.  (PSUF ¶ 31.)  On April 7, 2014, a Montana district court affirmed the judgment of the bankruptcy court in AP-14, making this judgment final.  In re Yellowstone Mountain Club, LLC, 2014 WL 1369363, at *3 (D. Mont. Apr. 7, 2014).

**C.  COLLECTION ON THE NOTES IS ASSIGNED FROM BLX TO YCLT, AND YCLT INSTITUTES THIS LAWSUIT**

On August 30, 2011, Judge Kirscher, while presiding over the BLX bankruptcy proceedings, approved the assignment of BLX's claims against Blixseth on the Notes to YCLT for purposes of collection.  (PSUF ¶ 13.)  The assignment provided that YCLT shall be entitled to 58 percent of any recovery, and that the BLX estate shall be entitled to 42 percent of any recovery, based on their respective shares of the claims against Blixseth.  (Hoard Decl., Ex. 15 at 2.)

On September 12, 2011, YCLT sent a letter to Blixseth demanding payment of the full amount of principal owed on the Notes by September 16, 2011.  (PSUF ¶ 15.)  Blixseth failed to pay, and as a result, YCLT commenced the present suit.  (Id. ¶ 16; Compl.)  In this action, YCLT seeks to set aside the release of Blixseth's liability on the Notes as a fraudulent transfer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | June 18, 2014 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

under California Civil Code § 3439.04 and 11 U.S.C. § 548(a), and to collect on the Notes under a breach of contract theory. (Compl.) On February 24, 2012, the Court denied Blixseth's motion to dismiss these claims. (2/24/12 Order.)

**III.
DISCUSSION**

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, when addressing a motion for summary judgment, the Court must decide whether there exist "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial, which it can meet by presenting evidence establishing the absence of a genuine issue or by "pointing out to the district court . . . that there is an absence of evidence" supporting a fact for which the non-moving party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Where the moving party bears the burden of persuasion at trial, it will meet its burden of persuasion on summary judgment only if it can show "that the evidence is so powerful that no reasonable jury would be free to disbelieve it." Shakur v. Schriro, 514 F.3d 878, 890 (9th Cir. 2008) (internal quotation marks omitted); see also S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003) ("As the party with the burden of persuasion at trial, the [moving party] must establish beyond controversy every essential element of its . . . claim." (internal quotation marks omitted)). In other words, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) (internal quotation marks omitted). However, "the moving party need not disprove the other party's case." Id. (citing Celotex, 477 U.S. at 325).

Once the moving party has carried its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(2). To defeat summary judgment, the non-moving party must put forth "affirmative evidence" that shows "that there is a genuine issue for trial." Anderson, 477 U.S. at 256–57. This evidence must be admissible. See Fed. R. Civ. P. 56(c), (e). The non-moving party cannot prevail by "simply show[ing] that there is some metaphysical doubt as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | June 18, 2014 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Rather, the non-moving party must show that evidence in the record could lead a rational trier of fact to find in its favor. <u>Id.</u> at 587. In reviewing the record, the Court must believe the non-moving party's evidence, and must draw all justifiable inferences in its favor. <u>Anderson</u>, 477 U.S. at 255.

**B. APPLICATION**

**1. YCLT'S CLAIMS ARE NOT BARRED BY JUDICIAL ESTOPPEL OR RES JUDICATA**

Blixseth sets forth several theories as to why YCLT's claims should be barred by judicial estoppel or res judicata. First, Blixseth argues that YCLT's "assertion and success on its alter ego claim in AP-14 should judicially estop it from pursuing its Complaint against Mr. Blixseth in this case." (Blixseth Mem. at 9.) According to Blixseth, it is "clearly inconsistent for the YCLT to come into this Court 'stand[ing] in the shoes' of a corporation, the legal identity of which it previously and successfully alleged should be disregarded." (<u>Id.</u> at 10) (citing <u>ASARCO LLC v. Americas Mining Corp.</u>, 396 B.R. 278, 329-330 (S.D. Tex. 2008); <u>In re Destiny Enterprises, LLC</u>, 2008 WL 5047808, at *3 n.14 (Bankr. D. Ariz. 2008).) Second, Blixseth urges that judicial estoppel must be applied "out of due respect for the California Superior Court's specific orders and judgments approving the settlement of all claims between Edra Blixseth, Timothy Blixseth and their entities (including [BLX]) following nearly two years of hotly contested litigation" in their divorce proceedings. (<u>Id.</u> at 13.) Finally, Blixseth also insists that "YCLT's claims in this case are barred by res judicata because the YCLT is suing on the same cause of action that it sued upon in AP-14." (<u>Id.</u> at 15.)

Judicial estoppel is an equitable doctrine that "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749-50 (2001) (internal quotation marks and citations omitted). The doctrine applies to positions taken in the same action or in different actions. <u>See Rissetto v. Plumbers and Steamfitters Local 343</u>, 94 F.3d 597, 605 (9th Cir. 1996) ("We now make it explicit that the doctrine of judicial estoppel is not confined to inconsistent positions taken in the same litigation."). It also "applies to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion." <u>Wagner v. Professional Engineers in California Government</u>, 354 F.3d 1036, 1044 (9th Cir. 2004) (citing <u>Helfand v. Gerson</u>, 105 F.3d 530, 535 (9th Cir.1997)).

The doctrine of claim preclusion, or res judicata, "bars any subsequent suit on claims that were raised or could have been raised in a prior action." <u>Cell Therapeutics, Inc. v. Lash Grp.</u>,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | June 18, 2014 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

Inc., 586 F.3d 1204, 1212 (9th Cir. 2009).  "Claim preclusion 'applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties.'"  Id. (quoting Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir. 2002)).  To demonstrate privity between a non-party and a party to former litigation, "the party who asserts that the matter is barred by claim preclusion must demonstrate that the nonparty's interests and rights were represented and protected in the prior action."  Pedrina v. Chun, 97 F.3d 1296, 1301-02 (9th Cir. 1996); see United States v. ITT Rayonier, Inc., 627 F.2d 996, 1003 (9th Cir. 1980) (holding that privity exists between a non-party and a party if the latter is so closely bound with the former as to be its "virtual representative").

Accordingly, in order to properly assert judicial estoppel or res judicata, Blixseth must demonstrate that the plaintiff in this action is the same as, or in privity with, the plaintiff in the Montana bankruptcy court action or the California Superior Court divorce proceedings.  Blixseth cannot do so.

First, although both the instant action and the Montana bankruptcy court action involve YCLT, the entities on whose behalf YCLT brings the particular claims in each action differs.  In the Montana bankruptcy court action (AP-14), YCLT brought claims against Blixseth on behalf of the Yellowstone Club Debtors, which included Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, Big Sky Ridge, LLC, and Yellowstone Club Construction Company, LLC.  (See Docket No. 99-6 [United States Bankruptcy Court for the District of Montana 8/16/10 Memorandum of Decision ("Bankruptcy Court Order")] at 2.)  In the instant action, YCLT brings claims against Blixseth on behalf of BLX, pursuant to an assignment for purposes of collection by the trustee of BLX's bankrupt estate.  (See Compl. at 2.)

Because the two parties differ, Blixseth must show that they were in privity in order to preclude the complaint from proceeding.  But Blixseth has put forth no evidence indicating that the Yellowstone Club Debtors and BLX were in privity so that BLX's interests and rights were represented and protected in AP-14.  Blixseth urges that privity between the parties is demonstrated by the fact that BLX, as manager of the Yellowstone Club, executed an "Assignment and Assumption Agreement" on behalf of the Yellowstone Club entities "in furtherance of consummating the Yellowstone Club plan of reorganization," and thus gave "the YCLT its standing to prosecuted [sic] Mr. Blixseth in AP-14."  (Blixseth Mem. at 18.)  However, the signing of the Assignment and Assumption Agreement, which assigned the Yellowstone Club Debtors' claims against Blixseth to YCLT, does not indicate that BLX's interests were represented and protected in AP-14.  To the contrary, as noted by YCLT, the Yellowstone Club Debtors were adverse to BLX and, on February 4, 2009, sued BLX to collect on several obligations owed by BLX to the Yellowstone Club Debtors, including the $208

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | June 18, 2014 |
|----------|------------------------|------|----------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

million note executed by BLX in 2005.  (Docket No. 104 [YCLT's Opposition to Blixseth's Motion for Summary Judgment ("YCLT Opp.")] at 6; Docket No. 99-18 at Ex. D.)  The present adversary proceeding was stayed when the involuntary bankruptcy petition was filed against BLX on September 21, 2009.  (YCLT Opp. at 6.)

In short, in AP-14 YCLT prosecuted only the claims of the Yellowstone Club Debtors, and did not prosecute any claim for the benefit of BLX.  A careful review of the bankruptcy court's memorandum of decision shows that it never stated or even implied that the interests of BLX were being represented in that case, or that the Yellowstone Club Debtors and BLX were somehow in privity.  At the time of the trial in AP-14, BLX was already in bankruptcy, and did not assign its claims to YCLT until August 30, 2011, one year after the bankruptcy court had rendered its decision in AP-14.  (Id. at 7; Docket No. 99-21 [Assignment of Claims to YCLT].)  Blixseth has failed to raise a genuine dispute of material fact as to whether the Yellowstone Club Debtors and BLX were in privity for purposes of res judicata.

Second, Blixseth cannot show that BLX was a party to the divorce proceedings in California Superior Court.  As the bankruptcy court found in AP-14, "neither the [Yellowstone] Debtors nor any of Blixseth's creditors had an opportunity to contest or litigate the MSA or the Release.  As such, this Court concludes that nothing that occurred in the Blixseth divorce proceeding is binding upon the Debtors."  (Bankruptcy Court Order at 105.)  Blixseth has failed to put forth any evidence contradicting this finding that BLX, as a creditor of Blixseth, was not a party to his divorce proceedings.  Moreover, as discussed in detail below, the factual findings of the bankruptcy court in AP-14 are binding on Blixseth under the doctrine of collateral estoppel.  Accordingly, because Blixseth has failed to raise a triable issue of fact regarding whether BLX was a party to the Blixseths' divorce proceedings, judicial estoppel cannot be invoked to bar YCLT's complaint.

Because the undisputed facts of record in this proceeding demonstrate that the Plaintiff in this action is the same as, or in privity with, the plaintiff in AP-14 or the state court divorce proceedings, neither judicial estoppel nor res judicata can prevent this action from proceeding.  Blixseth's motion for summary judgment with respect to these defenses is therefore **DENIED**.

**2.  THE RELEASE CONSTITUTES A FRAUDULENT TRANSFER BECAUSE THE FINDINGS OF FACT IN AP-14 ARE BINDING ON BLIXSETH UNDER THE DOCTRINE OF COLLATERAL ESTOPPEL AND CONCLUSIVELY ESTABLISH BLIXSETH'S FRAUDULENT INTENT**

YCLT urges that the findings of fact of the bankruptcy court in AP-14 are binding on Blixseth under the doctrine of collateral estoppel and conclusively establish that Blixseth caused

LINKS: 94, 99

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | June 18, 2014 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

BLX to give him the Release with the actual intent to hinder, delay, and defraud his creditors, and that the Release should therefore be set aside as a fraudulent transfer.  (YCLT Mem. at 13.)

Offensive nonmutual collateral estoppel, or issue preclusion, applies where "'the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party.'"  Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.4 (1979)).  The application of offensive nonmutual collateral estoppel is appropriate only if:  (1) there was a full and fair opportunity to litigate the identical issue in the prior action, (2) the issue was actually litigated in the prior action, (3) the issue was decided in a final judgment, and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action.  Syverson v. Int'l Business Machines Corp., 472 F.3d 1072, 1078 (9th Cir. 2007) (internal citations omitted).  "The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment."  Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1321 (9th Cir. 1992).

Additionally, courts should take into account "potential shortcomings or indices of unfairness" when determining whether to apply offensive nonmutual collateral estoppel, including whether: "(1) the plaintiff had the incentive to adopt a 'wait and see' attitude in the hope that the first action by another plaintiff would result in a favorable judgment which might then be used against the losing defendant; (2) the defendant had the incentive to defend the first suit with full vigor, especially when future suits are not foreseeable; (3) one or more judgments entered before the one invoked as preclusive are inconsistent with the latter or each other, suggesting that reliance on a single adverse judgment would be unfair; and, (4) the defendant might be afforded procedural opportunities in the later action that were unavailable in the first and that could readily cause a different result."  Syverson, 472 F.3d at 1078-79 (citing Parklane Hosiery, 439 U.S. at 330-31) (internal quotation marks omitted).

Here, YCLT has demonstrated that all of the requisite elements are met in this case.  It is undisputed that the issue of whether Blixseth obtained the Release with the actual intent to hinder, delay, and defraud his creditors was litigated in AP-14.  Blixseth was also the defendant in that adversary proceeding and had a full and fair opportunity to litigate the issue in the bankruptcy court action, which proceeded to trial.  On April 7, 2014, a Montana district court affirmed the judgment of the bankruptcy court in AP-14, making this judgment final.  In re Yellowstone Mountain Club, LLC, 2014 WL 1369363, at *3.

Moreover, none of the considerations that would prevent the Court from applying offensive nonmutual collateral estoppel is present in this case.  YCLT could not have asserted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | June 18, 2014 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

BLX's claims in the adversary proceeding because it was not assigned the claims until after judgment was entered in AP-14. There is also no unfairness to Blixseth in applying offensive collateral estoppel here. Blixseth had a full and fair opportunity to litigate the issue of whether he fraudulently obtained the Release, and had every incentive to vigorously defend himself in that action considering the substantial sum of money that was at stake. Finally, the judgment in AP-14 was not inconsistent with any previous decision, and there are no procedural opportunities available to Blixseth here that were unavailable in the bankruptcy court action that could cause a different result. Accordingly, application of offensive nonmutual collateral estoppel is appropriate in this case.

YCLT argues that the Release constitutes a fraudulent transfer under both the California Civil Code[1] and the United States Bankruptcy Code. (YCLT Mem. at 8.) Under § 3439.04(a)(1) of the California Civil Code, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . (1) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1). A transfer found to be fraudulent under § 3439.04(a)(1) can be avoided under § 3439.07(a)(1), which provides: "[i]n an action for relief against a transfer or obligation under this chapter, a creditor . . . may obtain: (1) [a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim. Similarly, under § 548(a)(1)(A) of the United States Bankruptcy Code, a trustee may avoid as fraudulent any transfer of an interest of the debtor in property within two years of the debtor's filing for bankruptcy if: "the debtor voluntarily or involuntarily (A) made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . , indebted." 11 U.S.C. § 548(a)(1)(A). Such a fraudulent transfer can be avoided pursuant to 11 U.S.C. § 550.

Here, there is no genuine issue of material fact that would prevent the Court from finding that the Release should be set aside as a fraudulent transfer. Although BLX is the transferor with regard to the Release, the bankruptcy court found that "Blixseth dominated and controlled the affairs of BGI [n/k/a BLX] to such an extent that BGI had no separate corporate identity apart from Blixseth. Blixseth and BGI were one in [sic] the same. . . . BGI was clearly Blixseth's alter ego." (Bankruptcy Court Order at 95.) The Release was not an arms length transaction because Blixseth was negotiating the Release while he was in control of BLX. (See id. at 104-05.) The bankruptcy court further determined that "Blixseth's fraudulent intent could not be more clear,"

_____

[1] YCLT asserts this claim pursuant to 11 U.S.C. § 544, which gives trustees the right to avoid transfers of a debtor's property which would be avoidable under state law. See 11 U.S.C. § 544; Compl. ¶ 39.

LINKS: 94, 99

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | June 18, 2014 |
|----------|------------------------|------|----------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

and conclusively found that the Release was a transfer that "Blixseth obtained . . . with the actual intent to hinder, delay and defraud his creditors."  (Id. at 105, 109.)  These findings by the bankruptcy court in AP-14 are binding on Blixseth and collaterally estop him from relitigating the issues of whether he controlled BLX and caused it to execute the Release with the actual intent to hinder, delay, or defraud his creditors.

Because the Court finds that Blixseth, as BLX's alter ego, obtained the Release with the actual intent to hinder, delay, or defraud his creditors, the Release therefore constitutes a fraudulent transfer under both California Civil Code § 3439.04(a)(1) and 11 U.S.C. § 548(a)(1)(A).[2]  As such, the Release can be avoided pursuant to California Civil Code § 3439.07(a)(1) and 11 U.S.C. § 550.  See Cal. Civ. Code § 3439.07(a)(1); 11 U.S.C. § 550. Accordingly, YCLT's motion for summary judgment with respect to its first two claims for fraudulent transfer under state and federal law is **GRANTED**, and Blixseth's motion for summary judgment on these claims is **DENIED**.

### 3.  BECAUSE BLIXSETH BREACHED THE NOTES, YCLT IS ENTITLED TO JUDGMENT AGAINST BLIXSETH FOR THE PRINCIPAL BALANCE AND INTEREST DUE ON THE NOTES

Because the Court finds that the Release must be set aside as a fraudulent transfer, YCLT is entitled to recover the principal balance and interest due on the Notes under its breach of contract theory.

Blixseth attempts to evade his obligations on the Notes by arguing that YCLT cannot enforce the Notes because it is not in possession of the original Notes and has not met its burden to demonstrate that it satisfies the three requirements under California Commercial Code § 3309. Under California law, a "person entitled to enforce" an instrument, such as a promissory note, includes:  (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3309 or subdivision (d) of § 3418.  Cal. Com. Code § 3301. Section 3309 of the California Commercial Code provides that:

> A person not in possession of an instrument is entitled to enforce the
> instrument if (1) the person was in possession of the instrument and entitled
> to enforce it when loss of possession occurred, (2) the loss of possession was not

---

[2] Because the Court finds that the Release constitutes an actual fraudulent transfer, the Court need not determine whether the Release also constitutes a constructive fraudulent transfer under Cal. Civ. Code § 3439.04(a)(2) and 11 U.S.C. § 548(a)(1)(B).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | June 18, 2014 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

the result of a transfer by the person or a lawful seizure, and (3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

Cal. Com. Code § 3309(a).

Here, although BLX is no longer in possession of the original Notes, it has sufficiently shown that all three requirements under § 3309 are met to allow it to enforce the Notes. BLX is the owner of the Notes, and was entitled to enforce them at the time it lost possession of the Notes. On December 31, 2006, Blixseth executed the two Notes payable on demand to BLX, memorializing his obligation to pay BLX the $199,124,480.88 distributed to Blixseth from BLX. (See Docket Nos. 99-8 and 99-9.) Both of the Notes provide that "[t]he payment of principal and all accrued interest shall be made upon written demand of Payee." (Id.) Later, pursuant to the MSA entered into by the Blixseths, these Notes were marked "Superseded by Replacement Note 8/13/08." (See Docket Nos. 99-12 and 99-13.) YCLT submits copies of the original Notes with and without these markings. (See id.; Docket Nos. 99-8 and 99-9.) The replacement promissory note was executed by Edra Blixseth, and states that it "amends, restates and supersedes" Blixseth's Notes dated December 31, 2006, and promises payment to BLX in the amount of $181,011,985. (See Docket No. 99-11.) Of course, as discussed above, this was all part of Blixseth's fraudulent scheme to release himself from liability on the Notes. Although YCLT maintains that the original Notes were delivered to Blixseth following the closing of the MSA and the execution of the Release, Blixseth insists that they were never delivered. (See YCLT Mem. at 14; Docket No. 103 [Blixseth's Opposition to YCLT's Motion for Summary Judgment ("Blixseth Opp.")] at 2.) Blixseth submits the declaration of his in-house lawyer, Michael Doyle ("Doyle"), who states that he asked Edra's divorce attorneys for the original Notes, but only received copies of the Notes. (Docket No. 103-4 [Declaration of Michael W. Doyle ("Doyle Decl.")] ¶ 10.) Doyle further states that possession of the original Notes "really did not matter legally because regardless of who held the original notes, by the terms of the MSA, they were cancelled and of no further force or effect." (Id.) YCLT indicates that representatives of the BLX bankruptcy estate have thoroughly searched all of the BLX records in their possession and have been unable to locate the original Notes. (Docket No. 108 [YCLT Reply in Support of Motion for Summary Judgment ("Reply")] at 3; Docket No. 108-3 [Declaration of Michael P. Talia ("Talia Decl.")] ¶ 2.)

Accordingly, it appears that the original Notes were lost around the time that the Blixseths consummated the MSA. But as demonstrated from the undisputed evidence above,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | June 18, 2014 |
|----------|------------------------|------|---------------|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

BLX's loss of possession was not the result of a transfer or a lawful seizure. Despite BLX's attempts to locate the original Notes, their whereabouts cannot be determined. Moreover, the Court finds that Blixseth will be "adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument." Cal. Com. Code § 3309(b). Not only were the original Notes purportedly canceled and marked with the words "Superseded by Replacement Note" written in large letters across the face of the Notes, but there also appears to be no possibility that another individual or entity would be able to enforce the Notes. The events surrounding the creation of the Notes and the obligations memorialized in them are discussed in great detail in the bankruptcy court's memorandum of decision in AP-14, and are reiterated in the instant order. Blixseth has more than sufficient protection against anyone claiming to be entitled to enforce the Notes. These Notes represent one part of Blixseth's elaborate fraudulent scheme of self-dealing, and he cannot now profit from his unlawful conduct merely because the original Notes cannot be located. The Court finds that YCLT has met its burden under § 3309 and is entitled to enforce the Notes.

YCLT claims that it is entitled to judgment against Blixseth for the principal balance and interest due on the Notes because Blixseth breached his obligation under the Notes after YCLT (as assignee of BLX's claims on the Notes) demanded payment. (YCLT Mem. at 14-16.) Under California law, a cause of action for breach of contract requires proof of the following elements: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (Ct. App. 2008).

Here, there can be no dispute that YCLT has established each element. The two Notes executed by Blixseth in favor of BLX are enforceable contracts. Blixseth signed the Notes and BLX provided consideration by agreeing to disburse funds in the total amount of $199,124,480.88 to Blixseth. BLX performed its obligations under the contract by disbursing the funds to Blixseth, and Blixseth then breached the Notes by failing to pay the remaining balance of $187,483,000 and the accrued interest to YCLT after it sent a letter requesting payment of the full amount of principal and interest owed on the Notes. BLX has suffered and will continue to suffer damages from Blixseth's breach because it lent a substantial amount of money to Blixseth for which it is receiving neither interest nor return of principal. Because these facts are uncontroverted, the Court concludes that YCLT has established its claim for breach of contract against Blixseth.

In opposition, Blixseth argues that, if found liable on the Notes, he should not be held responsible for the entire amount because he already made a payment of $30 million on the Notes. In support of this assertion, he submits only a declaration in which he states: "Between

LINKS: 94, 99

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-08283 GAF (SPx) | Date | June 18, 2014 |
|---|---|---|---|
| Title | Marc S Kirschner v. Timothy L Blixseth | | |

2006 and 2008, I recall paying approximately $30 million in principal on the two promissory notes that I executed in favor of BGI which originally totaled approximately $198 million." (Docket No. 103-2 [Second Declaration of Timothy L. Blixseth ("Second Blixseth Decl.")] ¶ 3.) However, this self-serving declaration, without more, fails to raise a genuine issue of material fact with regard to the remaining balance of principal on the Notes. Moreover, this statement is inconsistent with the documented balance amount contained in Robert Reilly's ("Reilly") April 16, 2010, expert report submitted on Blixseth's behalf in Adversary Proceeding No. 09-00018 in the U.S. Bankruptcy Court for the District of Montana, entitled Snow v. BLX Group, Inc., et al. (See Docket No. 99-15 at 8.) In his report, Reilly indicates that the balance amount is based on information provided to Reilly by Blixseth's attorney. (Id. at 2.) Specifically, Reilly states that the $187,483,000 balance was obtained from the "2007 Form 1120S U.S. Income Tax Returns of Blixseth Group, Inc.," which contains a balance sheet showing the book value of BLX's assets. (See id. at 8; YCLT Reply at 4.) Blixseth's vague statement that he "recall[s] paying approximately $30 million" without any other supporting evidence is insufficient to raise a triable issue of fact with respect to the principal balance due on the Notes. See Matsushita Elec. Indus. Co., Ltd., 475 U.S. at 586-87 (holding that the non-moving party cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts," but rather must show that evidence in the record could lead a rational trier of fact to find in its favor).

The Court concludes that YCLT is entitled to judgment against Blixseth for the full amount of the principal balance and interest due on the Notes. Accordingly, YCLT's motion for summary judgment with respect to its breach of contract claim is **GRANTED**, and Blixseth's motion for summary judgment on this claim is **DENIED**.

**IV.**
**CONCLUSION**

For the foregoing reasons, YCLT's motion for summary judgment is **GRANTED**, and Blixseth's motion for summary judgment is **DENIED**. YCLT is **ORDERED** to submit a proposed judgment consistent with this order **no later than the close of business on Friday, June 27, 2014**.

**IT IS SO ORDERED**.